KACZMAREK, Plaintiff in error, v. STATE, Defendant in error.

*January 5—February 9, 1968.*

72

74

For the plaintiff in error there was a brief by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *Alvin A. Stack* of counsel, all of Milwaukee, and oral argument by *Mr. Stack.*

For the defendant in error the cause was argued by *E. Michael McCann,* assistant district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

ROBERT W. HANSEN, J. This application for writ of error seeks a review of a judgment of conviction of burglary.

None of the defendant-petitioner's claims of error was raised during the trial or prior to judgment. None of the claims of error was made the basis of a motion to withdraw his plea of guilty. None of his claims of error was raised in any way until, very nearly one year after his conviction and sentence on a charge of burglary, he mailed a letter to this court asking that counsel be appointed to represent him in proceedings for post-conviction relief.

On this sequence of events and since the time within which the defendant could move the trial court for leave to withdraw his plea of guilty appears to have passed, it could be held that the defendant has no right at this time to a review of the claims of error in his trial.

However, there have been instances in which this court, as a matter of discretion, has chosen to review matters of record in criminal cases despite the fact that they were not initially or properly raised in the trial court. For example, *Rafferty v. State* (1966), 29 Wis. 2d 470, 138 N. W. 2d 741; *Van Voorhis v. State* (1965), 26 Wis. 2d 217, 131 N. W. 2d 833. Briefs having been submitted and arguments made, we elect to consider the points raised in this case on the merits.

Following the issuance of the warrant, the defendant appeared before the county court judge sitting as magistrate. Bail was set. The defendant was advised by the court of his right to counsel and right to a preliminary hearing. The defendant waived preliminary hearing but did not waive his right to counsel. Thereupon, the county court judge, acting as magistrate, bound the defendant over to the circuit court. An unexplained delay of ten days ensued before counsel was appointed in the circuit court. Defense counsel, after his appointment, could have moved to have the case remanded to the county court for a preliminary hearing pursuant to sec.

955.18 (2) (a), Stats. This was not done. A plea of guilty was entered by the defendant in the circuit court on the same day that counsel for him had been appointed.

Counsel for the defendant argues that the defendant was denied due process of law because ". . . the magistrate, at his initial appearance, after accepting his waiver of the preliminary hearing, did not inquire as to whether the defendant waived his right to counsel; whether the defendant was indigent; did not ask the defendant if he desired appointment of an attorney by the court or notify him that if he did he would be sent to the circuit court so that such appointment could be completed."

It is clear that the effect of binding over the defendant to the circuit court was to transfer to the circuit court all further proceedings, including arraignment, determination of indigency, appointment of counsel as well as the subsequent trial. This was done pursuant to sec. 957.26 (2), Stats., applicable to Milwaukee county only, providing that:

". . . where a defendant is charged with a felony not triable in the county court and claims to be indigent, unless he waives his right to counsel or waives preliminary hearing, the magistrate before whom he appears shall transfer the case to the circuit court of the county for a determination of the claim, and the clerk of circuit court shall assign the same to one of the criminal branches of that court. A determination of indigency shall thereupon be made, and the case remanded to the magistrate together with the appointment of counsel, if any."

This circuitous and cumbersome procedure for the appointment of counsel, applying only to Milwaukee county as the only county in the state with 500,000 population, has been before this court before, most recently in *Jones v. State* (1967), 37 Wis. 2d 56, 154 N. W. 2d 278. On the question of whether an indigent accused has a constitutional right to have counsel appointed at his initial appearance before a magistrate following his

arrest on the ground that this appearance is a step in the "criminal prosecution" within the meaning of art. I, sec. 7 of the Wisconsin Constitution, the court was divided. Two justices are listed in the decision as believing that there is such a constitutional right. The majority of the court went no farther than requiring that the appointment of counsel be made at least by the preliminary. The majority holding, as footnote 14 in the *Jones Case* makes clear, is that in Milwaukee county appointments of counsel are to be made consistent with the procedure set forth in sec. 957.26 (2), Stats. This was the procedure followed in the present case.

The fact that the right to preliminary hearing was waived by the defendant prior to appointment of counsel does not change the situation. In the case of *Sparkman v. State* (1965), 27 Wis. 2d 92, 98, 133 N. W. 2d 776, this court adopted the rule (prospective only) that as a matter of public policy an indigent is entitled to counsel "at or prior to a preliminary hearing unless intelligently waived." Any question as to the intelligent waiver of the preliminary in this case is erased by the election of the defendant, after appointment of counsel, not to move for return of the case to the magistrate for preliminary hearing. This is understandable in the situation of a defendant intending and in fact subsequently pleading guilty, but it confirms the fact of waiver of right to a preliminary hearing.

There remains the troublesome fact of a ten-day delay between the prompt transference of the case to the circuit court and the actual appointment of counsel for the defendant. This is not the first time this situation has been presented to this court. In the recent case of *Wolke v. Rudd* (1966), 32 Wis. 2d 516, 145 N. W. 2d 786, there was an eleven-day delay in the court appointment of counsel after the defendant made his initial appearance. In *Jones v. State, supra,* there was a twenty-eight-day interval between arrest and advising a defendant of his

right to counsel, and an additional fourteen-day delay in appointing counsel. In neither case were the delays held to offend the due-process clause of the fourteenth amendment.

In the case before the court, it is clear that nothing adverse to the interests of the defendant transpired during the ten-day delay. In fact, nothing at all transpired. The defendant in this case has made no allegation that he was prejudiced by the delay involved. In the light of his subsequent plea of guilty, it would be difficult to see what such reason could be. In any event, there is no claim of causal connection between the ten-day delay and the plea of guilty.

To minimize delays in the appointment of counsel, this court, in the *Jones Case,* adopted a rule, for prospective application only, that at an indigent defendant's initial appearance before a court or magistrate, which in this case would have been the appearance of the defendant before the county court judge sitting as magistrate, he shall be advised of his right to counsel and that counsel be appointed at that time unless intelligently waived. This rule requiring earlier appointment of counsel should, even though it does not apply in this case, being of prospective application only, make this the last of the cases in which lengthy time lags between initial appearances in court and appointment of counsel need be explained or excused.

Successor counsel, court-appointed to represent the petitioner on the writ of error, now argues that defendant was denied effective assistance of counsel by reason of conflicting interests of himself and a codefendant who were represented by the court-appointed attorney at the time of trial. As a corollary contention, present counsel claims that the defendant was denied due process of law by the trial court's failure to ascertain the presence of a conflict of interest. When the trial court appointed one attorney to represent two codefendants, Kaczmarek and

Hull, it was clear that the matter of possible conflict of interest in such dual assignment was considered. After a recess following the appointment, the attorney appointed advised the trial court that he did not believe that there was a conflict of interest between Kaczmarek and Hull, and the arraignment proceeded, and both Kaczmarek and Hull pleaded guilty. As to a third codefendant, La Shell, who subsequently pled not guilty and was, following trial, acquitted, the defense counsel did feel and find the possibility of conflict of interest and did remove himself from the defense of codefendant La Shell.

The mere fact of dual representation does not constitute a denial of effective counsel. To find denial of assistance of counsel contrary to the sixth amendment of the constitution there must be established a strong possibility of inconsistent interests that in fact demonstrably hindered the performance of counsel at trial. Particularly where no request for solo counsel is made, the defendant is not entitled to the appointment of an attorney for himself alone, unless a conflict of interest appears. This court has clearly stated: "Petitioner must make a showing that the dual representation impaired the effectiveness of his counsel." *Mueller v. State* (1966), 32 Wis. 2d 70, 77, 145 N. W. 2d 84.

The two defendants and their one attorney made two appearances before the trial judge. On the first, their pleas of guilty were entered and a finding of guilt as to both was made. No allegation of conflict of interest as between the two defendants at this stage of proceedings is made. It is difficult to see what it could be. Both had earlier admitted their participation in the burglary. Both pleaded guilty.

As to this court appearance, the words of *State v. Reppin* (1967), 35 Wis. 2d 377, 387, 151 N. W. 2d 9, clearly apply:

"We cannot hold the representation of two codefendants charged with the same crime *ipso facto* creates a con-

flict of interest and thus impairs the effective assistance of counsel. . . the added responsibility entailed in the defense of a second defendant might in fact in and of itself sufficiently impair counsel's effectiveness in some cases so as to require relief. This, of course, is less likely when pleas of guilty are entered than when dual representation is given in an extensive trial."

The complaint of the defendant as to effective representation by counsel does not run to the judgment of conviction entered on the guilty plea but rather to his sentence.

On March 2, 1966, the codefendants appeared before the trial court for the post-plea of guilty hearing. Testimony was taken including the testimony of a police officer that Kaczmarek's statement to him went as follows:

He had visited the dry cleaning store in November of 1965 to determine if it could be burglarized. On the evening of January 20, 1966, he, La Shell, Hull and two juveniles were riding about in a car. He suggested the burglary and the others agreed. He broke into the store and removed the safe, while the others waited in the car. The others helped him put the safe in the car. They eventually drove to Hull's house where they broke open the safe and divided the $600 in cash found therein.

It was testified that the defendant was on parole for burglary at the time of the offense and trial. The defendant's juvenile record was placed into the record including attempted burglary (1960), burglaries (2) (1961), burglary (1963), burglary (1965).

During this hearing, Hull did elect to make a statement on his own behalf stating that he had drunk one-half case of beer on the night of the burglary, that he had no idea that the burglary was to take place and that it was entirely Kaczmarek's idea. Actually, nothing that he had to say made Kaczmarek the planner, originator and principal executor of the burglary as fully as Kaczmarek's statement to the police officer on which he elected to make no comment at the time of his sentencing.

The defendant, Kaczmarek, was twice asked if he desired to make any statement and on both occasions he expressly stated that he did not want to make a statement. The codefendants were found guilty. A presentence investigation as to each was ordered.

On March 10, 1966, the court received recommendations of the state, the probation officer, and a plea on behalf of the defendant by counsel.

The trial court sentenced Kaczmarek to not more than four years in the Wisconsin Reformatory. The trial court then took up the matter of sentencing codefendant Hull. The trial court received recommendations of the state, the probation officer and a plea by counsel, all concerning codefendant Hull.

Counsel's plea tended to exculpate Hull and inculpate the defendant. However, since the sentence had been imposed on Kaczmarek at the time that counsel made this plea, it could have no effect on a result earlier made and a decision earlier reached. After several delays, on March 21, 1966, codefendant Hull received a sentence of not more than three years at the Wisconsin Reformatory, execution stayed and Hull placed on probation for three years.

If Hull's testimony had not been merely cumulative to that of the police officer and had counsel's remarks on behalf of Hull not been after the sentencing of the defendant, the question would be closer.

The retroactive evaluation of defendant's present counsel appears to be that Hull profited by speaking up and that silence proved to be less than golden for Kaczmarek. That would depend not on the election to speak, but on what one had to say. In the light of Kaczmarek's earlier statement to the police, the fact of his involvement in earlier burglaries and being on parole for burglary, the recommendation against probation of the probation department all weigh heavily against his being considered a likely prospect for probation privileges. We cannot

conclude that, if he had made a statement on his own behalf, the result would have been different. In any event, he was twice asked by the trial court if he wanted to make a statement, and he twice expressly stated that he did not want to do so.

Briefly, in the brief and more extensively on oral argument, present counsel contends that trial counsel provided ineffective assistance to the defendant because he ". . . had no time to investigate the charge against the appellant nor did he determine if appellant's rights were safeguarded when arrested and he could not effectively enter into plea negotiations with the district attorney's office." Present counsel is contending that trial counsel, to adequately represent his clients, was required to seek an adjournment. The tactic of seeking a postponement is often used by attorneys in criminal cases. It is not true that it is always used, or that it must be resorted to. Trial counsel, of course, could have made a motion for postponement of the trial for investigative purposes or for any other reason. However, where the defendant had admitted his participation in the burglary and intended to enter a plea of guilty, the advantages of a deferred trial date became less persuasive. In view of the confession of the defendant and the entire record, the decision not to seek adjournment may well have worked to the advantage of the defendant.

The suggestion that seeking postponement of trial would have made possible to more effectively "enter into plea negotiations with the district attorney's office" is negatived by the record. At the time of the post-plea hearing, the police officer who had taken Kaczmarek's statement testified that Kaczmarek admitted:

He and another individual had burglarized a filling station on December 31, 1965. He, Hull and the two juveniles had burglarized a grocery store on January 16, 1966, and another business establishment on January 19,

1966. In each of the last two burglaries, he had been the one who had broken and entered and removed the property.

On the plea of guilty, in the brief period of time between his appointment and the trial, the court-appointed counsel secured an agreement not to prosecute on the three additional counts of burglary. Had this plea negotiation not been effected, the defendant would have faced a possible maximum sentence of nearly forty years possibly to be served consecutive to his parole violation. We refrain from quoting the decisions that hold that, unless the representation of counsel is so inadequate and of such low competency as to amount to almost no representation at all, no finding of inadequacy or incompetence will be made. We find no basis for holding other than that the defendant was effectively represented by competent counsel at the time of the trial.

*By the Court.*—Judgment affirmed.