HALL, Plaintiff in error, v. STATE, Defendant in error.

*No. State 42. Submitted March 6, 1974.—Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 352.)

For the plaintiff in error the cause was submitted on the brief of *Patrick J. Devitt*, Legal Aid Society of Milwaukee.

For the defendant in error the cause was submitted on the brief of *Robert W. Warren*, attorney general, and *Robert D. Martinson* and *James H. McDermott*, assistant attorneys general.

HEFFERNAN, J.   The court's acceptance of Hall's guilty plea and its finding of guilt are not contested. The only issue raised is whether Hall was denied effective counsel at sentencing because the same lawyer represented both Hall and Dixon.

The record shows that Hall's attorney made a sentencing plea to the court in which he stated that Dixon should receive the more lenient sentence of the two. He stated that Dixon "was the less . . . aggressive in the act," and that he had been "the victim of circumstances and the people surrounding him."

It is because at sentencing his counsel made a comparison of the culpability of Dixon and Hall and found Hall the more culpable, warranting a greater sentence, that Hall now claims he was deprived of effective counsel at that critical stage of the proceedings. No contention is made that any conflict arose prior to the sentencing.

Judge O'CONNELL'S conduct of the proceeding, his interrogation of counsel and of the parties in respect to the negotiated plea, the acceptance of the plea, the finding of guilt, and the hearing on sentencing constitute a model of judicial thoroughness and full compliance with the standards which this court has set. Reversible error is claimed only because of the conduct of counsel.

At the very outset of the hearing on the pleas of guilty, both the assistant district attorney and defense counsel stated that, in the event the judge was to consider a prison term for both defendants, it was agreed that Dixon be sentenced for the lesser term. Hall stated that he had no objection to proceeding with the taking of the plea under these circumstances. After both defendants were carefully interrogated under the standards of *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713, the defense counsel for Hall and Dixon was given an opportunity to make a statement on their behalf prior to sentencing. Counsel pointed out that, except for the charges pending before the court, Dixon had no criminal record. Of Dixon, he said, "He, I believe, was the victim of circumstances and the people surrounding him." After pointing out that Dixon had been cooperative with the police and with him and after stating that he thought Dixon was unlikely to again commit a crime, he said:

"I believe strongly that Mr. Dixon should be given an opportunity on probation because of the facts surrounding this. Mr. Dixon has intimated to me all along that he was not responsible for any injury to the lady about whom the officer testified. He was the man in the tennis shoes, so-to-speak, who grabbed the purse and ran."

Judge O'CONNELL asked defense counsel if he were not aware of the theory underlying the party-to-a-crime statute, under which both defendants were charged and which would make each defendant equally guilty of the substantive crime. In response, defense counsel said that both he and Dixon were aware of it and stated, "I only want to point this out to the court for mitigation purposes with regard to Mr. Dixon . . . ." Counsel said he thought Dixon was remorseful and said, "I know his family and I do believe he would be the more likely choice for probation, if the Court were to so consider it."

In respect to Hall, counsel merely said:

"Now, on behalf of Mr. Hall, Mr. Hall has one case against him, 6781. He has a very minimal prior criminal record. He was almost gainfully employed until he was picked up on this particular charge. By reason of the fact of his minimal prior record, I think the Court should consider also placing him on probation, although I'm not as familiar with Mr. Hall as I am with Mr. Dixon; and I would strongly urge the Court to consider this disposition with regard to Mr. Hall."

Thereafter, the assistant district attorney, contrary to the probation recommendation for both defendants made by defense counsel, recommended that Hall and Dixon be sentenced to a term of imprisonment. The trial judge then asked defense counsel why, in view of the fact that Dixon was charged with an additional crime, he was concurring, and in fact recommending, that there be a shorter sentence for Dixon than for Hall. In explanation, defense counsel stated:

"If I may, because I was present during these pre-trial negotiations, one, Mr. Dixon was fully cooperative to myself and the police officer investigating other alleged purse snatches by other people in the community; two, Mr. Dixon, it was felt, was the less, should I say, aggressive in the act; and, three, it was considered and felt by the officer and myself and the District Attorney that Mr.

Dixon was more likely to fulfill the terms and obligations of being a contributing member of the community."

When Judge O'CONNELL said he could not see much to "differentiate the two defendants," defense counsel said, "We just felt, Your Honor, that Mr. Dixon was more of a victim of circumstances." Judge O'CONNELL then pointed out that Dixon acted alone on the first crime with which he was charged. Judge O'CONNELL ended the discussion by commenting:

"Well, under the circumstances, I respectfully differ with your defense counsel's evaluation. By my experience, this is not the way I analyze it."

The trial judge then proceeded to sentencing. In accordance with *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512, he carefully explicated his reasons for the sentences imposed. On the charge of strong-armed robbery, he sentenced Hall to an indeterminate term of seven years and Dixon to an indeterminate term of five years. On the second charge of strong-armed robbery, he sentenced Dixon to an indeterminate term of two years to run consecutively to the five year term.

The record irrefutably shows that Hall was denied effective counsel at sentencing, because his attorney, in speaking on behalf of Dixon, made statements not supported by the record that tended to show greater culpability on the part of Hall.

Defense counsel said that Dixon was the victim of circumstances and of the people around him. From the record, that person was Hall. Defense counsel also stated that it was his belief that Dixon was not responsible for the injury to one of the victims and thus inferred that Hall was the responsible person. The record did not show which of the two criminals had caused the injury. Counsel also stated that Dixon had cooperated with him and with the police. The implication was that Hall had not

cooperated. Additionally, he stated that Dixon was the less aggressive of the two. There was no evidence to support this appraisal of comparative aggressiveness.

Hall's alleged greater culpability, none of which was supported by the record, was used for the purpose of securing a more lenient disposition of Dixon's case at the expense of Hall.

Defense counsel's colloquy with the sentencing judge reveals an actual conflict of interest, which prevented Hall from having effective counsel at this stage of the proceedings.

In the case of *People v. Chacon* (1968), 69 Cal. 2d 765, 73 Cal. Rptr. 10, 447 Pac. 2d 106, Mr. Chief Justice TRAYNOR, speaking for the court, pointed out the conflict which exists at sentencing when the argument of comparative culpability is used to influence the sentencing authority when two or more defendants have the same counsel. He said at page 775:

"Conflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant. Often the strongest argument that separate counsel can make on the issue of penalty is that his client was less culpable than the others and that he, at least, should not be executed. In addition, he must be free to stress particular mitigating elements in his client's background or other individual mitigating factors that may not apply to a codefendant. Counsel representing more than one defendant is necessarily inhibited in making such arguments and in presenting evidence to support them. He cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of the lesser penalty."

Under the standards adopted by this court, once it is established by clear and convincing evidence that an actual conflict of interest exists, a defendant must be granted a vacation of his sentence and a new hearing. *State v. Reppin* (1967), 35 Wis. 2d 377, 387–389, 151

N. W. 2d 9; *Curry v. State* (1967), 36 Wis. 2d 225, 234, 152 N. W. 2d 906.

The instant case is unlike the situation in *Kaczmarek v. State* (1968), 38 Wis. 2d 71, 155 N. W. 2d 813, relied upon by the state, where we sustained a sentence when counsel's plea tended to exculpate one defendant and inculpate another; but in that case the facts were different, because the complaining defendant had been sentenced at an earlier hearing and, accordingly, inculpatory remarks in respect to him at the other defendant's hearing could not affect the representation he had been afforded earlier. The court in *Kaczmarek* recognized that a different question would have been presented had the defendants been sentenced in a single hearing.

The state does not really argue that there was not a conflict of interest. Rather, it asserts that there are other factors which accounted for the disparity of the sentences —that the trial judge rejected assertions of defense counsel and that there was nothing to show that the defendant was prejudiced because of his counsel's conflict of interest.

Under *Reppin*, however, this court has indicated that a conflict of interest at sentencing per se renders counsel ineffective, and it is not required that actual prejudice be shown. All that need be shown is that there was a conflict of interest and that, as a result, the defendant was deprived of the undivided loyalty of his counsel.

Under the circumstances, Judge O'CONNELL handled the sentencing as fairly as possible, but, as is demonstrated in this case, the most circumspect and evenhanded judge cannot fulfill the constitutional mandate that requires the presence of effective counsel at all critical stages of a criminal trial. Only if there has been an express waiver of counsel can the positive mandate of the constitution emphasized in *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799, be otherwise satisfied.

In *Chapman v. California* (1967), 386 U. S. 18, 23, fn. 8, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, the supreme court considered the application of the harmless error rule to the violation of the constitutionally protected right of counsel. Relying upon *Gideon v. Wainwright, supra,* it pointed out that denial of the right to counsel can never be treated as harmless error. The harmless error rule of *Chapman v. California* has since been modified in some other respects. In *Wold v. State* (1973), 57 Wis. 2d 344, 356, 204 N. W. 2d 482, we recognized that, as to constitutional errors of an evidentiary nature, *Chapman v. California* was modified by *Harrington v. California* (1969), 395 U. S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. *Harrington* points out, however, that the rule of *Chapman* in respect to effective counsel was not affected. *See Harrington,* page 251, which refers with approval to the language in *Chapman, supra,* page 23, that ". . . there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." The basic constitutional right to the right to counsel is pointed out as one of these.

In *State v. Reppin, supra,* at page 389, we referred with approval to *Craig v. United States* (6th Cir. 1954), 217 Fed. 2d 355, for the proposition that, if conflict in the representation by counsel does in fact exist, a showing of prejudice is not required. It is indeed true, as the state asserts, the record does not demonstrate any actual prejudice. Had the representation been fully effective and by separate counsel, the court might well have imposed the same sentence, but as the California court said in *People v. Gallardo* (1969), 269 Cal. App. 2d 86, 90, 74 Cal. Rptr. 572:

"[I]t is usually the very error of not appointing separate counsel which makes it so difficult for the defendants to point to tangible evidence of prejudice."

Additionally, the state argues that, under the facts of this case, Hall expressly waived any right to object to the ineffectiveness of counsel or to any possible conflict of interest that his counsel might have in representing both defendants. In support of that argument, the record shows that, prior to the entry of the guilty plea, and while the court was considering the appropriateness of permitting the change of plea on the basis of prior negotiations, both the prosecutor and defense counsel stated that it was their intention to argue that Hall was the more culpable of the two and that, if incarceration were imposed on both defendants, both counsel would contend that Dixon should receive the lesser term of imprisonment. Certainly these circumstances spell out some of the facts that would support an argument of waiver. In *Johnson v. Zerbst* (1938), 304 U. S. 458, 58 Sup. Ct. 1019, 82 L. Ed. 1461, the United States Supreme Court considered the elements that would support a waiver of the right to counsel. The court, at page 464, said:

"It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

The basic problem with the state's position is that the record presents no evidence that Hall knew of his right to an independent counsel, free of any conflict with the interests of a codefendant. The state only contends that there was a "tacit" waiver of the assistance of counsel in this respect. However, the tacit acquiescence of Hall at the sentencing hearing does not constitute an affirma-

tive relinquishment of the right of counsel. The presumption is against such waiver. Hall, at the time of the sentencing, had a minimal criminal record. His record consisted of disorderly conduct, shoplifting, and criminal damage to property, which was a violation of a city ordinance. Judge O'CONNELL described the offenses as "misdemeanors—or even lesser misdemeanors, violations of City ordinances." There is nothing in the record to indicate that he was a "sophisticated" criminal, who, on the basis of his own experience and prior knowledge, could intelligently waive the right to counsel.

The state also argues that, under the standard for the effectiveness of counsel in effect at the time of this trial, Hall could only complain if his counsel's representation was so inadequate and of such low competence as to amount to no representation at all. Since this case was tried before the date of our mandate in *State v. Harper* (1973), 57 Wis. 2d 543, 205 N. W. 2d 1, the *Harper* test of reasonably effective counsel is not applicable. However, under *Reppin,* where an actual conflict of interest is revealed, the representation is per se ineffective, even under the now displaced standard.

The plea of guilty was not contaminated by the conflict of interest that emerged for the first time at sentencing, and accordingly the conviction stands. However, in accordance with this opinion, the sentence is vacated, and the defendant must be returned to the circuit court for resentencing.

*By the Court.*—Order reversed, and sentence of the circuit court for Milwaukee county upon the conviction for strong-armed robbery is vacated. The warden of the Wisconsin Correctional Institute, Fox Lake, is ordered to remand the custody of Luther Hall, III, to the sheriff of Milwaukee county pending his resentence by the circuit court for Milwaukee county on his conviction for strong-armed robbery.

ROBERT W. HANSEN, J. *(dissenting)*. Is there ground for reversal when developments at the time of sentencing follow exactly what is provided in a bargained plea agreement between defendants, their counsel and the prosecutor? Does a "conflict of interest" arise when the trial attorney for codefendants, recommending probation for both defendants, refers to their respective roles in the crime to which both entered pleas of guilty?

In the bargained plea agreement here, made part of the record, the district attorney suggested and the codefendants, Hall and Dixon, agreed that if the trial court was to consider incarceration appropriate that the court would be asked to ". . . consider less time for Mr. Dixon than Mr. Hall. . . ."

At the time of entry of plea, the trial court was informed that there had been negotiations and that: ". . . An agreement has been reached by the defendants [Hall and Dixon] and our office [Milwaukee county district attorney's office] . . ." As to codefendant Hall, the court was informed: "With regards to Mr. Hall . . . The defendant would plead guilty to strong-armed robbery, which is Count No. 1, and the second count, which is attempted strong-armed robbery, would be dismissed and read in for the purposes of sentencing. With regard to Mr. Hall, a presentence examination would be recommended; but at the conclusion of the presentence examination, we would again recommend incarceration for this defendant."

As to the agreed plea bargain including a recommendation of a lesser or lighter prison sentence for defendant Dixon than for defendant Hall, if incarceration of both was deemed by the trial court appropriate, the record shows this colloquy between court and counsel:

*"The Court:* Mr. Reiher, you represent the defendants you stated; is that correct?

"*Mr. Reiher* [defendants' trial counsel]: Yes, Your Honor.

"*The Court:* Is that your understanding of the pretrial negotiations in their entirety?

"*Mr. Reiher:* Yes, with one exception, Your Honor. I think it should be clear that when I appeared at the District Attorney's office, Mr. Klinkowitz indicated to me in the presence of the officer that if Your Honor were to consider incarceration eventually in this matter, that Your Honor consider less time for Mr. Dixon than Mr. Hall. That was the only exception to their recommendation.

"*Mr. Jacobson* [assistant district attorney]: Your Honor, I have spoken with the officer. He indicates that that is, in fact, correct."

Completing the plea bargain agreement, the assistant district attorney stated: ". . . It is also my understanding that there is no objection on behalf of defendants, Mr. Dixon or the defendant Mr. Hall, for both of these cases, Case No. H–5991 and Case No. H–6781, for the purposes of this proceeding, to be considered at the same time." The trial court added, "In other words, to be consolidated for the purposes of trial?" Defendants' counsel and both defendants, Hall and Dixon, answered that that was their understanding.

Based on such bargained plea agreement, the defendants, Hall and Dixon, pleaded guilty to the first count of strong-armed robbery and the state moved to dismiss the second count, attempted strong-armed robbery. Asked whether he had heard the statements made by the district attorney and his attorney with regard to the pretrial negotiations had in the case, defendant Hall answered, "Yes, sir." Asked whether they were correct according to his understanding, defendant Hall answered, "Yes, sir."

At the time of sentencing, the district attorney did recommend that both defendants be incarcerated and that "Mr. Hall get a stronger sentence than Mr. Dixon." The

defendant Hall can hardly claim surprise or prejudice in the district attorney's recommending exactly what the plea bargain provided that the state would recommend.

At the time of sentencing, the defendants' attorney, James Reiher, recommended to the court that both defendants be placed on probation. As to defendant Dixon, he did identify Dixon as ". . . the man in tennis shoes, so-to-speak, who grabbed the purse and ran. . . ." The trial court interrupted to say, "You know, Mr. Reiher, the theory of parties to a crime, do you not?" Defense counsel answered that he did and had explained that entirely to Mr. Dixon. Conceding a pending charge for another strong-armed robbery, counsel argued that Dixon showed ". . . remorse and would, under proper supervision and given a proper job, contribute."

In urging probation for defendant Hall, defense counsel Reiher stated that Hall had a very minimal prior criminal record, and had been gainfully employed until he was picked up on this particular charge, the only charge pending against him. He concluded: ". . . I would strongly urge the court to consider this disposition with regard to Mr. Hall." We do not suggest that probation was appropriate for either of these two participants in a strong-armed robbery of two elderly ladies when we note that trial counsel did recommend probation for both.

What is claimed to be a "conflict of interest" derives from defendants' attorney identifying Dixon as the purse snatcher who grabbed for a purse and ran, leaving Hall, the coparticipant who also grabbed for a purse but knocked an elderly lady down and kicked her when she was down. No claim or suggestion is made that this is not exactly what happened. What is apparently concluded is that the role of each defendant in the dual purse snatching should not have been mentioned or revealed to the court. On this record, with defendant Dixon facing and pleading

guilty to another strong-armed robbery charge, the only reasonable basis for the state's including in the bargained pleas a state recommendation of a lighter sentence for Dixon relates to his part in the double purse snatching here involved. If the recommendation of a lighter sentence for Hall's codefendant was not indicated by their respective roles in the purse snatching, defendant Hall would and should not have agreed in the plea bargain to the recommendation as to sentencing being made, or to the consolidated plea entry that brought recommendation of a lesser sentence for Dixon to the court in both cases.

What here transpired at time of sentencing is exactly what the bargained plea agreement of the parties provided was to happen. A person ought not be permitted to complain later about something being added to a stew when he earlier agreed that the challenged ingredient be added. Nor would the writer fault the trial attorney for the two defendants who, in urging probation for both, mentioned the respective roles of each defendant in the purse snatchings involved. A criminal trial is a search for the truth, and the searching ought not cease when the sentencing process begins. The writer would affirm.