GATES, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 79–222–CR. Argued June 21, 1979.—Decided August 21, 1979.*
(Also reported in 283 N.W.2d 474.)

† Petition to review denied.

For the plaintiff in error, there were briefs by *Richard L. Cates*, state public defender and *Steven P. Weiss*, assistant state public defender, with oral argument by *Steven P. Weiss.*

For the defendant in error, there was a brief by *Bronson C. La Follette*, attorney general and *Betty R. Brown*, assistant attorney general, with oral argument by *Betty R. Brown.*

Before Voss, P.J., Brown, J., and Bode, J.

VOSS, P.J.   The defendant, Eugene Gates, was convicted of second-degree sexual assault contrary to sec. 940.225(2)(a), Stats.   Judgment was entered January 23, 1978 sentencing Gates to an indeterminate term not to exceed four years.   On July 28, 1978, the trial court

denied Gates' motion for a new trial. Writs of error were issued to review both the judgment and the order.

The incident occurred on the evening of May 20, 1977 near the Top Deck Bar in Lake Geneva, Wisconsin. On July 5, 1977, Gates was charged with second-degree sexual assault. Following the preliminary examination, Gates' appointed counsel requested to withdraw because of a conflict of interest. Gates' new attorney moved for dismissal of the charge or a new preliminary hearing on the ground that Gates had been denied effective assistance of counsel. The motion was denied, and the case proceeded to trial by jury.

At trial, the victim testified that she had met Gates for the first time the evening of May 20, 1977 at the bar when he asked her to dance. After dancing with Gates four times, the victim agreed to have a drink with him and then go for a walk in a nearby park. They walked to the part of the park farthest from the bar, sat on a bench and began kissing. When Gates started to caress her breasts, the victim stated that she wanted to return to her friends in the bar. Gates then asked her to accompany him further and wait so that he could "take a leak." The victim sat on the top of some stairs leading to the lake while Gates disappeared into some bushes for about a minute.

When Gates returned, he again started to kiss and caress the victim, who testified that she did not return the kisses. He asked her to touch him, but she refused. When he took her hand and began to move it toward his lap, she withdrew and started to walk back to the bar. She testified that Gates caught up with her, grabbed her by the shoulders and threw her to the ground. He sat on her back while she screamed and attempted to fight him. Eventually, he turned her over onto her back and squeezed her throat until she had difficulty breathing. He threatened to tear out her voice box and kill her if

she did not stop struggling. At his demand, she then removed her pants, and they had intercourse.

She testified that she did not wish to return to the bar because she was bruised, dirty and humiliated. Instead, she walked back to her car with Gates, locked him out and drove away. She then stopped a sheriff's car and reported that she had been beaten up. Other witnesses testified that Gates was the man with whom she left and that she was bruised and cut about the face, neck and back as a result of the attack. Gates did not testify.

Gates did not dispute the sufficiency of the evidence to sustain his conviction. Instead, he attacks the constitutionality of the statute and the jurisdiction of the trial court. Specifically, the issues raised are: (1) whether sec. 940.225(4), Stats., gives an unconstitutionally vague definition of consent, (2) whether sec. 940.225(2)(a), Stats., impermissibly shifts the burden of proof on consent to the defendant, (3) whether the jury instructions were erroneous and (4) whether Gates was denied effective assistance of counsel at the preliminary hearing thereby depriving the trial court of jurisdiction.

## VAGUENESS

Section 940.225(4), Stats., defines "consent" for purposes of the sexual assault law as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact." Gates argues this definition is so general that a reasonable person is precluded from determining whether he is in violation of the law. At trial, the jury returned twice for further instructions on the elements of the crime. In addition, the foreman asked specifically for the meaning of con-

sent. Gates cites the jury's apparent confusion as strong evidence of the statute's vagueness.

Gates' assertions that the statute is too vague to allow an individual to determine whether there has been consent must be viewed by the appropriate standard. The summary of that standard given in *State v. Courtney*, 74 Wis.2d 705, 713, 247 N.W.2d 714, 719 (1976), is equally applicable here:

> Where First Amendment rights are not involved— and it is not contended that First Amendment questions are presented by this case—a defendant who challenges the enactment under which he was convicted on grounds of vagueness is limited to the conduct actually charged. Where that conduct is clearly within the prohibited zone, the defendant will not be heard to hypothesize other factual situations which might raise a question as to the applicability of the statute or regulation. [Citations omitted.]

Gates was charged with using force and threats of violence in order to compel the victim to engage in sexual intercourse. The victim struggled and screamed repeatedly before complying with his demands. There can be no doubt that Gates was given fair notice this was not the "freely given agreement" required by the statute. Therefore, Gates cannot sustain his contention that sec. 940.225(4), Stats., is unconstitutionally vague.

Another aspects of Gates' "vagueness" challenge appears to be a claim that any statutory definition which causes substantial confusion among the members of the jury deprives a defendant of his due process right to a fair trial. This claim is without merit. There are many possible reasons for a jury's request for further instruction besides statutory infirmity or an absence of due process. There has been no showing that the verdict returned was improper. A particular jury's desire to have

certain instructions repeated does not mean that they were ultimately unable to comprehend and properly apply the statutory definitions.

## BURDEN OF PROOF

Gates argues that sec. 940.225(2)(a), Stats., is unconstitutional because it shifts the burden of proof on the issue of consent to the defendant when read in conjunction with sec. 940.225(4), Stats. He claims that, by defining consent as words or overt actions indicating a freely given agreement and requiring there be no consent, the burden of proof is shifted to the defendant. Gates asserts that where intercourse and force are shown, the State can obtain a conviction without introducing any evidence pertaining to consent, while the defendant is required to show words or overt actions of consent in order to gain acquittal. Such a result can only be obtained by misconstruing the statute.

Section 939.70, Stats., provides: "No provision of the criminal code shall be construed as changing the existing law with respect to presumption of innocence or burden of proof." "The state in a criminal case is obligated to prove every essential fact of the crime charged beyond a reasonable doubt." *State v. Turner,* 76 Wis.2d 1, 10, 250 N.W.2d 706, 711 (1977). Thus, there is a clear legislative mandate to avoid any construction of sec. 940.225(2)(a), Stats., which would result in the State being relieved of its obligation to prove every element of the crime beyond a reasonable doubt.

The plain words of sec. 940.225(2)(a), Stats., dictate, as the State concedes, that there are three elements of the crime of second-degree sexual assault. The State must prove that the defendant (1) had sexual contact or sexual intercourse with another person, (2) without that

person's consent and (3) by use of threat of force or violence. Gates contends that, by defining consent as words or overt actions indicating an agreement to have sexual relations and then requiring the State to prove an absence of such words or actions, the legislature has relieved the State of its burden on the element of consent. We disagree.

In the absence of proof on the issue of consent, the State cannot obtain a conviction for second-degree sexual assault. The State must introduce evidence that there was no consent, and this evidence must be sufficient to convince the jury beyond a reasonable doubt. There is no presumption, as Gates asserts, that all acts of sexual contact or intercourse are without consent unless shown to have been preceded by words or overt actions of consent.

At argument, the State conceded that by enacting sec. 940.225, Stats., the legislature intended to relieve the State and the victim of the need to show "that her utmost resistance [was] overcome or prevented by physical violence or that her will to resist [was] overcome by threats of imminent physical violence likely to cause great bodily harm." Sec. 944.01 (2), Stats. (1973). The removal of the requirement of proof of "utmost resistance," however, does not relieve the State of the burden of showing there was no consent. As the State concedes, it is still required to prove the victim did not by either words or overt actions freely agree to have sexual contact or intercourse with the defendant.

The evidence presented in this case was sufficient to meet the State's burden. The victim testified she screamed and struggled with Gates for at least five minutes before fear and exhaustion led her to comply

with his demands. Earlier in the park and as she started to walk back to the bar, the victim responded to Gates' attempts to caress her breasts by stating that she wished to return to her friends in the bar. In this manner, the State established that the victim did not, by either her words or actions, freely agree to have intercourse. Neither the statute nor this conviction is tainted by a failure to meet the required burden of proof.

## INSTRUCTIONS

Gates argues that the instructions given to the jury were erroneous because they shifted the burden of proof on the issue of consent to him. The instructions given identified the victim's nonconsent to the intercourse as a separate element of the offense to be proven by the State beyond a reasonable doubt. The jury was instructed that if they were not so satisfied on each element they had to return a verdict of acquittal. The instructions were a correct interpretation of the requirements of the statute and cannot be erroneous.

Gates also contends that the instructions defining consent were so confusing and so misstated the law that he was denied a fair trial. He claims again that the instructions left the jury with a presumption of no consent to be rebutted by evidence of consent. This is simply not the case. The instructions clearly identified a showing of no consent as an element of the crime which the State had to prove beyond a reasonable doubt. "Consent" was defined by the same terms used in sec. 940.225(4), Stats. There was no misstatement of the law.

The jury's request for repetition of the instructions may indicate some confusion, but it does not require

reversal unless it can be shown that the verdict has been affected. The verdict returned by the jury was in proper form and was supported by ample evidence. Reinstruction is designed to resolve confusion which may occur when the jury attempts to digest all of the evidence and instructions they have been given. When the jury returns with a verdict, it is reasonable to infer that their confusion has been resolved.

## ASSISTANCE OF COUNSEL

Gates' final allegation of error concerns the withdrawal of his first appointed counsel because of a conflict of interest. That attorney represented Gates at the preliminary hearing and then withdrew. The trial court denied a motion for a new preliminary hearing requested by the second attorney appointed to represent Gates. Gates claims he was denied the effective assistance of counsel at the preliminary hearing, and the trial court thereby lacked jurisdiction to proceed.

A valid preliminary examination is an essential step in a criminal prosecution of a felony and is a prerequisite to the trial court's jurisdiction. *State ex rel. Klinkiewicz v. Duffy*, 35 Wis.2d 369, 373, 151 N.W.2d 63, 66 (1967). A preliminary hearing is a "critical stage" of a prosecution at which a defendant is constitutionally entitled to the assistance of counsel. *Coleman v. Alabama*, 399 U.S. 1, 9–10 (1970). Gates was represented by competent counsel at the preliminary hearing. Therefore, the issue is whether that assistance was rendered ineffective by the conflict of interest.

Our supreme court recently addressed a claim of a conflict of interest resulting in ineffective assistance of counsel in *State v. Medrano*, 84 Wis.2d 11, 28, 267 N.W. 2d 586, 593 (1978), by stating:

In order to establish that he was denied effective representation by counsel, [the defendant] must establish by clear and convincing evidence that an actual conflict of interest existed. *Hall v. State*, 63 Wis.2d 304, 311, 217 N.W.2d 352, [355] (1974). It is not sufficient that he show that a mere possibility or suspicion of a conflict could arise under hypothetical circumstances. *Harrison v. State*, 78 Wis.2d 189, 201, 254 N.W.2d 220, [225] (1977). However, [the defendant] does not have to show actual prejudice; once he shows an actual conflict he is entitled to relief. *Hall*, 63 Wis.2d at 311–312, [217 N.W. 2d at 355].

The United States Supreme Court similarly indicated that once a conflict of interest is shown no actual prejudice need be proven. *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978).

Gates argues that this court is bound by the trial court's "implicit" finding that his first attorney had a conflict of interest. Examination of the record reveals that the trial court never found that an actual conflict of interest existed. At a hearing on July 22, 1977, Gates' first attorney gave two reasons for withdrawing from the case. First, a conflict of interest might exist because he and his firm had several accounts with the bank at which the victim was employed. Second, since Gates was represented by another attorney on a different pending charge, the attorney felt it would be better to have the same attorney representing Gates on both charges. After ascertaining that Gates understood the proceeding and that no one objected to a substitution of attorneys, the trial court granted the petition to withdraw, but it did not state that a conflict of interest actually existed.

At a hearing on August 4, 1977, Gates' second attorney raised the objection that Gates had been denied effective assistance of counsel because of the conflict of interest. The trial court replied: "Well the Court can, I understand [the first attorney] perhaps felt some problem in this. I had difficulty in seeing why that would make any

particular difference, knowing the employer, doing business with the employer." The trial court then denied the motion.

The trial court apparently granted the motion to withdraw because the first attorney felt there was a conflict even though it did not see that a conflict actually existed. In the absence of a specific finding of a conflict of interest, this court must examine the situation to determine whether a conflict of interest existed. Like the trial court, we see no conflict of interest which would prevent an attorney from fully representing his client when the complaining witness is an employee of a bank with which he and his firm have accounts. As the Supreme Court said in *Holloway v. Arkansas*, 435 U.S. at 490, "in a case of . . . conflicting interests the evil—it bears repeating —is in what the advocate finds himself compelled to *refrain* from doing . . . ." [Emphasis in original.]

Unlike the attorneys in *Holloway* and *Medrano*, Gates' first attorney was not representing multiple defendants. In such a situation, inconsistent defenses cannot be pursued, and the attorney's effectiveness is substantially impaired. In the present situation, however, no possible defense is precluded by the attorney's business relations with the complaining witness's employer. An attorney should not be restrained in cross-examination or preparation and presentation of a defense by the possibility of personal resentment being generated between himself and a bank employee. This is not an actual conflict of interest impairing the effectiveness of counsel.

To the extent that Gates' first attorney subjectively felt a conflict of interest existed, it becomes necessary to examine the record to determine whether his perception prejudiced Gates. The attorney stated that he did not realize a bank employee was involved until she took the

stand at the preliminary hearing. Thus, his preparation for the hearing could not have been impaired. His cross-examination of the victim was vigorous and thorough, exploring several possible avenues of impeachment. The attorney withdrew from the case eight days after the hearing and before the information was filed against Gates. There can be no claim of actual prejudice in the matter.

## INTEREST OF JUSTICE

Finally, Gates requests a reversal of his conviction in the interest of justice. In order to grant a new trial in the interest of justice under sec. 752.35, Stats., this court must be convinced upon viewing the record as a whole that there has been a probable miscarriage of justice or that a new trial would lead to a different result. *State v. Medrano,* 84 Wis.2d at 28–29, 267 N.W.2d at 593; *Neely v. State,* 86 Wis.2d 304, 332–33, 272 N.W.2d 381, 394 (Ct. App. 1978). The record in this case fails to show any basis for finding a probable miscarriage of justice or a likelihood of a different outcome at a new trial.

*By the Court.*—Judgment and order affirmed.