STATE of Wisconsin, Plaintiff-Respondent,

v.

Karen J. FRANKLIN, Defendant-Appellant.

Court of Appeals

*No. 82–774–CR. Submitted on briefs December 20, 1982.—
Decided February 16, 1983.*
(Also reported in 331 N.W.2d 633.)

For the defendant-appellant the cause was submitted on the brief of *Mary E. Waitrovich,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *James H. McDermott,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.    In this case involving the claim that she was denied the effective assistance of counsel at sentencing, Karen Franklin argues she is entitled to a new sentencing hearing or, in the alternative, to withdraw her guilty plea. We conclude that there was an actual conflict between Franklin's interests and those of her attorney at sentencing, and, therefore, she is entitled to relief.

In June 1980, Franklin was charged with felony theft. Cash bond was set at $1,000. Franklin contacted an acquaintance, Milton Saewart, and requested help in meeting the bail amount. Saewart paid the $1,000 bond and, at Franklin's request, went to the office of her attorney, Thomas Hetzel. There, he executed an assignment of the bond document with the understanding that part of the bail money would be used in payment of Franklin's legal fees. Obviously, Franklin was not present at this meeting.

Franklin subsequently entered a plea of no contest to the theft charge. The plea was entered after a plea agreement had been arranged between Hetzel and the then district attorney, John Landa. The plea agreement provided that the state would join in the defendant's recommendation of a six-month sentence in exchange for a guilty plea and restitution. When the plea was made, an assistant district attorney, Fred Zievers, reported the terms of the agreement:

MR. ZIEVERS: The negotiations as I understand them, between Attorney Hetzel and the then District Attorney, John Landa, the defendant was to plead as charged and the State agrees to read in a soliciting prostitution charge as set forth in Kenosha Police Department Complaint No. 373826 alleged to have occurred on May 23, 1980 in the City of Kenosha. Further, that the defendant would agree to make restitution as a result of her conviction in the amount of $1,000 and further that there would be a joint recommendation for six months in the County Jail once restitution was made.

Hetzel added that the agreement also called for Huber privileges and that the jail term was to be "concurrent to traffic offenses." The trial court accepted the plea, but postponed sentencing pending the preparation of a presentence report.

The appeal in this case arises from the events that transpired at the sentencing hearing. The transcript reflects that a dispute arose between the assistant district attorney and Franklin's attorney concerning whether the plea agreement provided that the $1,000 bond would be used to make restitution to the victim. We think it necessary to discuss in detail what transpired at the hearing.

At sentencing, a different assistant district attorney, Katherine Lingle, represented the state. She stated the parties had entered into a plea agreement, under which the state was recommending a six-month jail term. She also stated it was the state's understanding the $1,000

bond on file would be used to make restitution to the victim of the theft. Hetzel interrupted, stating that Franklin had nothing to do with the bail money and it was not going to be used to make restitution. He said the bond had been assigned to him for the payment of legal fees. Hetzel stated that Franklin was employed and she would have to pay the $1,000. He also said the plea agreement called for probation.

The state requested that the $1,000 be produced at the hearing so it would be assured Franklin "would be following through on her part of the plea negotiations in return for our recommendation." Lingle reported that Landa's file notes called for the "$1,000 bond by defendant to go to the victim as restitution." The state also submitted a letter from Hetzel to John Landa that showed the plea agreement contemplated a joint recommendation of six months in the county jail, not probation.

Hetzel's response to the state's position regarding the bond money and the fact the letter clearly did not call for probation is vague. Apparently, Hetzel's position was that the plea negotiations in the theft case were closely connected with a plea agreement on another charge. In this second case, Franklin received a sentence of ten years' probation. Hetzel said that his discussions with John Landa contemplated that the $1,000 restitution would be repaid by Franklin during the ten year probationary period imposed *in the other* case. Hetzel also emphasized that his letter to Landa did not mention using the bond money for restitution.

The trial court then asked Hetzel if he wanted to make a statement before sentencing. Hetzel replied by reiterating his position concerning the use of the bond money:

MR. HETZEL: Very short. I have already made my statement on the bond money. That was assigned for fees, and that is the purpose of where it was to be going. It was assigned to me. Obviously, because I have not

received a dime on the case, I would not be doing this particular work. There was never any mention that particular money would ever be used, my client is going to make $1,000 restitution.

He also said he had no dispute with the presentence, except that the fact Franklin had obtained employment was not mentioned. He made no recommendation concerning sentence at this time.

After the statement, the prosecutor and Hetzel became involved in an exchange as to whether the plea agreement called for the restitution payment to be made at the time of sentencing or at some later date. Lingle stated that Landa's notes concerning the negotiations were clear and provided that the state would make its recommendation of six months "once restitution was made." She stated that obtaining the money "up front . . . was a very important factor in our recommendation." Hetzel, again pointing to his letter to Landa, said that no agreement had been reached concerning the date when the restitution had to be made.

The trial court sentenced Franklin to a five-year prison term. The judge emphasized, in imposing the sentence, the extensive nature of Franklin's record.

Franklin filed a post-conviction motion to vacate the sentence. She argued Hetzel's representation at sentencing was affected by an actual conflict of interest in that he advanced his personal interest in receiving fees over Franklin's interest in meeting the terms of the plea agreement. In an affidavit filed in support of the motion, Franklin stated that her understanding of the plea agreement, based on what Hetzel had told her, was that restitution was to be made prior to or at the time of sentencing and that the payment was to be made from the $1,000 bond. Franklin requested, in the alternative, that the court modify the sentence to a six-month term

on the ground that she was prepared and willing to pay the $1,000.

The trial court denied the motion, refusing to make a finding that Hetzel was ineffective. It made no statement concerning whether a conflict of interest existed at sentencing. Also, the trial judge said that the content of the plea agreement was immaterial, as he had made up his mind prior to the sentencing hearing to impose the five-year term. The state public defender, representing Franklin at the post-conviction hearing, then expanded the motion to include a request to withdraw the guilty plea on the basis that there was an illusory plea bargain. Franklin argued she was entitled to withdraw the plea because she pled guilty in reliance on a condition—the payment of restitution at the time of sentencing—that could not, due to Hetzel's actions, be kept. The trial court also denied this motion. Franklin renews these arguments on appeal.

A defendant's right to counsel in a criminal case is, of course, guaranteed by the United States and Wisconsin Constitutions. The right to the assistance of an attorney includes the right to effective representation. *State v. Koller,* 87 Wis. 2d 253, 260–61, 274 N.W.2d 651, 655 (1979). Counsel is considered *per se* ineffective "once it has been demonstrated that [he or she] actively represented a conflicting interest." *State v. Kaye,* 106 Wis. 2d 1, 8–9, 315 N.W.2d 337, 340 (1982). The defendant must show by clear and convincing evidence that an actual conflict of interest existed; it is not sufficient that he show a mere possibility or suspicion that a conflict could arise under hypothetical circumstances. *State v. Medrano,* 84 Wis. 2d 11, 28, 267 N.W.2d 586, 593 (1978). If the defendant meets this burden, then it is not necessary to prove actual prejudice or a resulting adverse

effect. *Hall v. State,* 63 Wis. 2d 304, 312, 217 N.W.2d 352, 355 (1974). The *Hall* court stated:

[T]his court has indicated that a conflict of interest at sentencing *per se* renders counsel ineffective, and it is not required that actual prejudice be shown. All that need be shown is that there was a conflict of interest and that, as a result, the defendant was deprived of the undivided loyalty of his counsel.

Although the trial court made no finding on the matter, the state devotes much of its brief to arguing that the plea agreement did not provide for the use of the bond to make restitution at sentencing. Based on this assessment, the state concludes that there could have been no conflict of interest at the hearing. The public defender, on the other hand, exerts much energy in support of the factual conclusion that the plea agreement contemplated use of the bail money to repay the victim prior to or at sentencing. This court is not a fact finder. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 108, 293 N.W.2d 155, 159 (1980). However, we do not deem resolution of the factual dispute discussed by the parties critical to our determination of whether Franklin is entitled to relief.

Our reading of the conflict of interest cases leads us to believe that the reason courts examine the underlying fact situation is to determine whether there is an intolerable risk that the attorney might sacrifice the goals of his client to serve selfish ends or the interests of another.[1] When the interests of the client and another to

---

[1] For example, in *Gates v. State,* 91 Wis. 2d 512, 522–25, 283 N.W. 2d 474, 478–80 (Ct. App. 1979), the issue was whether an actual conflict of interest existed when an attorney representing a defendant accused of sexual assault did business with the bank that employed the complaining witness. The court observed that, unlike the cases involving multiple representation, the relationship of the defense attorney and complaining witness did not create a situation where inconsistent defenses could not be pursued. Also,

whom the attorney owes allegiance are actually divergent, the risk that the advocate will find himself "compelled to refrain" from doing something on behalf of his client exceeds tolerable limits if representation continues and divergency remains. *See Gates v. State,* 91 Wis. 2d 512, 524, 283 N.W.2d 474, 479 (Ct. App. 1979).

We need not resolve the dispute concerning the content of the plea agreement because it is manifest from the sentencing hearing transcript that Hetzel *actually did* sacrifice his client's goals to further his personal financial interest. We need not talk in terms of the risks created by the underlying factual situation because it is clear from the record that the attorney "actively represented conflicting interests." *See Kaye,* 106 Wis.2d at 9, 315 N.W.2d at 340. By causing the hearing to degenerate into an argument over the use of the bond money, Hetzel sacrificed Franklin's interest in showing the court that a satisfactory plea agreement had been entered into that would make the victim whole. Franklin also had an interest in the state's enthusiastic support for the six month term; Hetzel's actions compromised any opportunity for this type of wholehearted endorsement. Finally, in actively and continually asserting that the bond money would be used to pay his fees, Hetzel implicitly stated to the court that his client was untrustworthy; he was unwilling to work out another arrangement with her for payment, yet he was asking the state to do so. Therefore, whether or not the plea agreement actually called for use of the bond money, after review of the sentencing

the court said that an attorney should not be restrained in cross-examination or preparation of a defense by the possibility of personal resentment between himself and a bank employee. Thus, the risk that the attorney would find himself compelled to refrain from doing something on behalf of his client was low and counsel would not be faulted, under such circumstances, if he decided to continue to represent the defendant.

transcript, we draw the same conclusion as the court did in *Hall,* 63 Wis. 2d at 311, 217 N.W.2d at 355.

Defense counsel's colloquy with the sentencing judge [and in this case, opposing counsel] reveals an actual conflict of interest, which prevented Hall from having effective counsel at this stage of the proceedings.[2]

Because an actual conflict of interest existed at sentencing, Franklin posits that the most appropriate remedy is the vacation of the sentence and a new hearing.[3] We agree that this is preferred. *See Hall,* 63 Wis. 2d at 311, 217 N.W.2d at 355. Additionally, she requests this court "order that Franklin may have a new opportunity to comply with the terms of the plea bargain and that the state must then [at the new sentencing hearing] specifically perform its obligations under the agreement." We assume that in making this request, Franklin is stating that *she* stands ready and willing to pay the $1,000 restitution (as opposed to using the bond money which, it appears from the record, has been released to Hetzel). We grant Franklin's request.

The state consistently took the position in the trial court that the agreement called for restitution prior to

---

[2] Because the record shows Hetzel actually represented conflicting interests, the trial judge's statement that he had made up his mind to impose the five year term prior to the sentencing hearing is of no consequence for, if an actual conflict is demonstrated, the defendant does not have to show he was prejudiced thereby:

Under *Reppin,* however, this court has indicated that a conflict of interest at sentencing *per se* renders counsel ineffective, and it is not required that actual prejudice be shown. All that need be shown is that there was a conflict of interest and that, as a result, the defendant was deprived of the undivided loyalty of his counsel.

*Hall,* 63 Wis. 2d at 312, 217 N.W.2d at 355.

[3] She also contends that there is a second available remedy: the withdrawal of the guilty plea.

or at sentencing. It admitted at the post-conviction hearing that the source of the funds was irrelevant; it cared not whether the bail money or some other source was used. Leaving aside the bail money, Franklin, in her post-conviction affidavit, also stated that she understood the agreement to call for restitution at or before sentencing in exchange for the six month recommendation. Thus, we think that the relevant parties (the district attorney, his assistants and Franklin) concur as to what the critical elements of the bargain were, *i.e.*, the payment of $1,000 at sentencing in exchange for the six month recommendation.

The state has not indicated whether, in the event this court ordered resentencing, it would comply with the terms of this agreement at the new hearing. This need not detain us, however, for there is authority for requiring the state to follow through. In *State v. Beckes,* 100 Wis. 2d 1, 8, 300 N.W.2d 871, 874–75 (Ct. App. 1980), a case involving the failure of a prosecutor to comply with a plea agreement, the court said:

Our holding is a narrow one: so long as the prosecutor does not abuse his discretion in doing so, he may withdraw from a plea bargain at any time prior to the entry of a guilty plea by defendant or other action by him constituting detrimental reliance on the agreement.

Here, the guilty plea has been entered; further, Franklin has served part of the sentence. We conclude that this constitutes sufficient reliance on the agreement to require the state to perform its end of the bargain at the new hearing.[4]

*By the Court.*—Order reversed and remanded.

---

[4] Once the plea agreement is validly before the court, there is, of course, nothing to restrain the trial judge from refusing to accept it. The court, though, however it finally decides, must make a record showing the sentencing to have been well-considered rather than *pro forma.*