# HOLLOWAY ET AL. *v.* ARKANSAS

No. 76–5856.   Argued November 2, 1977—Decided April 3, 1978

476

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, MARSHALL, and STEVENS, JJ., joined. POWELL, J., filed a dissenting opinion, in which BLACKMUN and REHNQUIST, JJ., joined, *post*, p. 491.

*Harold L. Hall* argued the cause and filed a brief for petitioners.

*Joseph H. Purvis*, Assistant Attorney General of Arkansas, argued the cause *pro hac vice* for respondent. With him on the brief were *Bill Clinton*, Attorney General, and *Robert Alston Newcomb*, Assistant Attorney General.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

Petitioners, codefendants at trial, made timely motions for appointment of separate counsel, based on the representations of their appointed counsel that, because of confidential information received from the codefendants, he was confronted with the risk of representing conflicting interests and could

---

*Howard B. Eisenberg* filed a brief for the National Legal Aid and Defender Assn. as *amicus curiae* urging reversal.

*Rollie R. Rogers* filed a brief for the Office of the Colorado State Public Defender as *amicus curiae*.

not, therefore, provide effective assistance for each client. We granted certiorari to decide whether petitioners were deprived of the effective assistance of counsel by the denial of those motions. 430 U. S. 965 (1977).

## I

Early in the morning of June 1, 1975, three men entered a Little Rock, Ark., restaurant and robbed and terrorized the five employees of the restaurant. During the course of the robbery, one of the two female employees was raped once; the other, twice. The ensuing police investigation led to the arrests of the petitioners.

On July 29, 1975, the three defendants were each charged with one count of robbery and two counts of rape. On August 5, the trial court appointed Harold Hall, a public defender, to represent all three defendants. Petitioners were then arraigned and pleaded not guilty. Two days later, their cases were set for a consolidated trial to commence September 4.

On August 13, Hall moved the court to appoint separate counsel for each petitioner because "the defendants ha[d] stated to him that there is a possibility of a conflict of interest in each of their cases . . . ." After conducting a hearing on this motion, and on petitioners' motions for a severance, the court declined to appoint separate counsel.[1]

Before trial, the same judge who later presided at petitioners' trial conducted a *Jackson* v. *Denno* hearing[2] to determine the admissibility of a confession purportedly made by petitioner Campbell to two police officers at the time of his arrest. The essence of the confession was that Campbell had entered the restaurant with his codefendants and had remained, armed with a rifle, one flight of stairs above the site

---

[1] No transcript of this hearing is included in the record, and we are not informed whether the hearing was transcribed.

[2] See *Jackson* v. *Denno*, 378 U. S. 368 (1964).

of the robbery and rapes (apparently serving as a lookout), but had not taken part in the rapes. The trial judge ruled the confession admissible, but ordered deletion of the references to Campbell's codefendants. At trial one of the arresting officers testified to Campbell's confession.

On September 4, before the jury was empaneled, Hall renewed the motion for appointment of separate counsel "on the grounds that one or two of the defendants may testify and, if they do, then I will not be able to cross-examine them because I have received confidential information from them." The court responded, "I don't know why you wouldn't," and again denied the motion.[3]

The prosecution then proceeded to present its case. The manager of the restaurant identified petitioners Holloway and Campbell as two of the robbers. Another male employee identified Holloway and petitioner Welch. A third identified only Holloway. The victim of the single rape identified Holloway and Welch as two of the robbers but was unable to identify the man who raped her. The victim of the double rape identified Holloway as the first rapist. She was unable to identify the second rapist but identified Campbell as one of the robbers.

On the second day of trial, after the prosecution had rested its case, Hall advised the court that, against his recommendation, all three defendants had decided to testify. He then stated:

> "Now, since I have been appointed, I had previously filed a motion asking the Court to appoint a separate attorney for each defendant because of a possible conflict of interest. This conflict will probably be now coming up since each one of them wants to testify.

---

[3] It is probable that the judge's response, "I don't know why you wouldn't," referred back to counsel's statement, "I will not be able to cross-examine them . . . ." If the response is so read, the judge's later statements, see *infra,* at 479 and 480, are directly contradictory.

"THE COURT: That's all right; let them testify. There is no conflict of interest. Every time I try more than one person in this court each one blames it on the other one.

"MR. HALL: I have talked to each one of these defendants, and I have talked to them individually, not collectively.

"THE COURT: Now talk to them collectively."

The court then indicated satisfaction that each petitioner understood the nature and consequences of his right to testify on his own behalf, whereupon Hall observed:

"I am in a position now where I am more or less muzzled as to any cross-examination.

"THE COURT: You have no right to cross-examine your own witness.

"MR. HALL: Or to examine them.

"THE COURT: You have a right to examine them, but have no right to cross-examine them. The prosecuting attorney does that.

"MR. HALL: If one [defendant] takes the stand, somebody needs to protect the other two's interest while that one is testifying, and I can't do that since I have talked to each one individually.

"THE COURT: Well, you have talked to them, I assume, individually and collectively, too. They all say they want to testify. I think it's perfectly alright [sic] for them to testify if they want to, or not. It's their business.

. . . . .

"Each defendant said he wants to testify, and there will be no cross-examination of these witnesses, just a direct examination by you.

"MR. HALL: Your Honor, I can't even put them on direct examination because if I ask them—

"THE COURT: (Interposing) You can just put them on the stand and tell the Court that you have advised them of their rights and they want to testify; then you tell the man to go ahead and relate what he wants to. That's all you need to do." [4]

Holloway took the stand on his own behalf, testifying that during the time described as the time of the robbery he was at his brother's home. His brother had previously given similar testimony. When Welch took the witness stand, the record shows Hall advised him, as he had Holloway, that "I cannot ask you any questions that might tend to incriminate any one of the three of you . . . . Now, the only thing I can say is tell these ladies and gentlemen of the jury what you know about this case . . . ." Welch responded that he did not "have any kind of speech ready for the jury or anything. I thought I was going to be questioned." When Welch denied, from the witness stand, that he was at the restaurant the night of the robbery, Holloway interrupted, asking:

"Your Honor, are we allowed to make an objection?

"THE COURT: No, sir. Your counsel will take care of any objections.

"MR. HALL: Your Honor, that is what I am trying to say. I can't cross-examine them.

"THE COURT: You proceed like I tell you to, Mr. Hall. You have no right to cross-examine your own witnesses anyhow."

Welch proceeded with his unguided direct testimony, denying any involvement in the crime and stating that he was at his home at the time it occurred. Campbell gave similar testi-

---

[4] The record reveals that both the trial court and defense counsel were alert to defense counsel's obligation to avoid assisting in the presentation of what counsel had reason to believe was false testimony, or, at least, testimony contrary to the version of facts given to him earlier and in confidence. Cf. ABA Project on Standards Relating to the Administration of Criminal Justice, The Defense Function § 7.7 (c), p. 133 (1974).

mony when he took the stand. He also denied making any confession to the arresting officers.

The jury rejected the versions of events presented by the three defendants and the alibi witness, and returned guilty verdicts on all counts. On appeal to the Arkansas Supreme Court, petitioners raised the claim that their representation by a single appointed attorney, over their objection, violated federal constitutional guarantees of effective assistance of counsel. In resolving this issue, the court relied on what it characterized as the majority rule:

> "[T]he record must show some material basis for an alleged conflict of interest, before reversible error occurs in single representation of co-defendants." 260 Ark. 250, 256, 539 S. W. 2d 435, 439 (1977).

Turning to the record in the case, the court observed that Hall had failed to outline to the trial court both the nature of the confidential information received from his clients and the manner in which knowledge of that information created conflicting loyalties. Because none of the petitioners had incriminated codefendants while testifying, the court concluded that the record demonstrated no actual conflict of interests or prejudice to the petitioners, and therefore affirmed.

## II

More than 35 years ago, in *Glasser* v. *United States*, 315 U. S. 60 (1942), this Court held that by requiring an attorney to represent two codefendants whose interests were in conflict the District Court had denied one of the defendants his Sixth Amendment right to the effective assistance of counsel. In that case the Government tried five codefendants in a joint trial for conspiracy to defraud the United States. Two of the defendants, Glasser and Kretske, were represented initially by separate counsel. On the second day of trial, however, Kretske became dissatisfied with his attorney and dismissed him. The District Judge thereupon asked Glasser's attorney, Stewart, if

he would also represent Kretske. Stewart responded by noting a possible conflict of interests: His representation of both Glasser and Kretske might lead the jury to link the two men together. Glasser also made known that he objected to the proposal. The District Court nevertheless appointed Stewart, who continued as Glasser's retained counsel, to represent Kretske. Both men were convicted.

Glasser contended in this Court that Stewart's representation at trial was ineffective because of a conflict between the interests of his two clients. This Court held that "the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer should simultaneously represent conflicting interests." *Id.,* at 70. The record disclosed that Stewart failed to cross-examine a Government witness whose testimony linked Glasser with the conspiracy and failed to object to the admission of arguably inadmissible evidence. This failure was viewed by the Court as a result of Stewart's desire to protect Kretske's interests, and was thus "indicative of Stewart's struggle to serve two masters . . . ." *Id.,* at 75. After identifying this conflict of interests, the Court declined to inquire whether the prejudice flowing from it was harmless and instead ordered Glasser's conviction reversed. Kretske's conviction, however, was affirmed.

One principle applicable here emerges from *Glasser* without ambiguity. Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: "Joint representation is a means of insuring against reciprocal recrimination. A common defense often

gives strength against a common attack." *Glasser* v. *United States, supra,* at 92 (dissenting opinion).[5]

Since *Glasser* was decided, however, the courts have taken divergent approaches to two issues commonly raised in challenges to joint representation where—unlike this case—trial counsel did nothing to advise the trial court of the actuality or possibility of a conflict between his several clients' interests. First, appellate courts have differed on how strong a showing of conflict must be made, or how certain the reviewing court must be that the asserted conflict existed, before it will conclude that the defendants were deprived of their right to the effective assistance of counsel. Compare *United States ex rel. Hart* v. *Davenport,* 478 F. 2d 203 (CA3 1973); *Lollar* v. *United States,* 126 U. S. App. D. C. 200, 376 F. 2d 243 (1967); *People* v. *Chacon,* 69 Cal. 2d 765, 447 P. 2d 106 (1968); and *State* v. *Kennedy,* 8 Wash. App. 633, 508 P. 2d 1386 (1973), with *United States* v. *Lovano,* 420 F. 2d 769, 773 (CA2 1970); see also cases collected in Annot., 34 A. L. R. 3d 470, 477–507 (1970). Second, courts have differed with respect to the scope and nature of the affirmative duty of the trial judge to assure that criminal defendants are not deprived of their right to the effective assistance of counsel by joint representation of conflicting interests. Compare *United States* v. *Lawriw,* 568 F. 2d 98 (CA8 1977); *United States* v. *Carrigan,* 543 F. 2d 1053 (CA2 1976); and *United States* v. *Foster,* 469 F. 2d 1 (CA1 1972), with *Foxworth* v. *Wainwright,* 516 F. 2d 1072 (CA5 1975), and *United States* v. *Williams,* 429 F. 2d 158 (CA8 1970).[6]

---

[5] By inquiring in *Glasser* whether there had been a waiver, the Court also confirmed that a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests. 315 U. S., at 70. In this case, however, Arkansas does not contend that petitioners waived that right.

[6] See ABA Project on Standards Relating to the Administration of Criminal Justice, The Function of the Trial Judge § 3.4 (b), p. 171 (1974):

"Whenever two or more defendants who have been jointly charged, or

We need not resolve these two issues in this case, however. Here trial counsel, by the pretrial motions of August 13 and September 4 and by his accompanying representations, made as an officer of the court, focused explicitly on the probable risk of a conflict of interests. The judge then failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel.[7] We hold that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of "assistance of counsel."

This conclusion is supported by the Court's reasoning in *Glasser*:

> "Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have the assistance of counsel. . . .
>
> .        .        .        .        .
>
> "Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to

---

whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel."

[7] There is no indication in the record, and the State does not suggest, that the hearing held in response to the motion of August 13 disclosed information demonstrating the insubstantiality of Hall's September 4 representations—based, as nearly as can be ascertained, on the codefendants' newly formed decision to testify—respecting a probable conflict of interests. So far as we can tell from this record, the trial judge cut off any opportunity of defense counsel to do more than make conclusory representations. During oral argument in this Court, Hall represented that the trial court did not request him to disclose the basis for his representations as to a conflict of interests. See Tr. of Oral Arg. 14–15.

There is no occasion in this case to determine the constitutional significance, if any, of the trial court's response to petitioners' midtrial objections.

refrain from embarrassing counsel in the defense of an accused *by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court."* 315 U. S., at 71, 76 (emphasis added).

This reasoning has direct applicability in this case where the "possibility of [petitioners'] inconsistent interests" was "brought home to the court" by formal objections, motions, and defense counsel's representations. It is arguable, perhaps, that defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail. As to the former, however, the trial court's responses hardly encouraged pursuit of the separate-counsel claim; and as to presenting the basis for that claim in more detail, defense counsel was confronted with a risk of violating, by more disclosure, his duty of confidentiality to his clients.

Additionally, since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. See, *e. g., Shuttle* v. *Smith,* 296 F. Supp. 1315 (Vt. 1969); *State* v. *Davis,* 110 Ariz. 29, 514 P. 2d 1025 (1973); *State* v. *Brazile,* 226 La. 254, 75 So. 2d 856 (1954); but see *Commonwealth* v. *LaFleur,* 1 Mass. App. 327, 296 N. E. 2d 517 (1973). In so holding, the courts have acknowledged and given effect to several interrelated considerations. An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *State* v. *Davis, supra,* at 31, 514 P. 2d, at 1027. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at

once of the problem. *Ibid.*[8] Finally, attorneys are officers of the court, and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *State* v. *Brazile, supra,* at 266, 75 So. 2d, at 860–861.[9] (Emphasis deleted.) We find these considerations persuasive.

The State argues, however, that to credit Hall's representations to the trial court would be tantamount to transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel. In the State's view, the ultimate decision on those matters must remain with the trial judge; otherwise unscrupulous defense attorneys might abuse their "authority," presumably for purposes of delay or obstruction of the orderly conduct of the trial.[10]

The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to

---

[8] The American Bar Association in its Standards Relating to the Administration of Criminal Justice, The Defense Function § 3.5 (b), p. 123 (1974) cautions:

"Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

[9] When a considered representation regarding a conflict in clients' interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation.

[10] Such risks are undoubtedly present; they are inherent in the adversary system. But courts have abundant power to deal with attorneys who misrepresent facts.

deal with counsel who resort to such tactics. Cf. *United States* v. *Dardi,* 330 F. 2d 316 (CA2), cert. denied, 379 U. S. 845 (1964); *People* v. *Kroeger,* 61 Cal. 2d 236, 390 P. 2d 369 (1964). Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client.[11] See *State* v. *Davis, supra.* In this case the trial court simply failed to take adequate steps in response to the repeated motions, objections, and representations made to it, and no prospect of dilatory practices was present to justify that failure.

## III

The issue remains whether the error committed at petitioners' trial requires reversal of their convictions. It has generally been assumed that *Glasser* requires reversal, even in the absence of a showing of specific prejudice to the complaining codefendant, whenever a trial court improperly permits or requires joint representation. See *Austin* v. *Erickson,* 477 F. 2d 620 (CA8 1973); *United States* v. *Gougis,* 374 F. 2d 758 (CA7 1967); *Hall* v. *State,* 63 Wis. 2d 304, 217 N. W. 2d 352 (1974); *Commonwealth ex rel. Whitling* v. *Russell,* 406 Pa. 45, 176 A. 2d 641 (1962); Note, Criminal Codefendants and the Sixth Amendment: The Case for Separate Counsel, 58 Geo. L. J. 369, 387 (1969). Some courts and commentators have argued, however, that appellate courts should not reverse automatically in such cases but rather should affirm unless the defendant can demonstrate prejudice. See *United States*

---

[11] This case does not require an inquiry into the extent of a court's power to compel an attorney to disclose confidential communications that he concludes would be damaging to his client. Cf. ABA Code of Professional Responsibility, DR 4-101 (C) (2) (1969). Such compelled disclosure creates significant risks of unfair prejudice, especially when the disclosure is to a judge who may be called upon later to impose sentences on the attorney's clients.

v. *Woods,* 544 F. 2d 242 (CA6 1976), cert. denied, 430 U. S. 969 (1977); Geer, Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney, 62 Minn. L. Rev. 119, 122–125 (1978). This argument rests on two aspects of the Court's decision in *Glasser.* First, although it had concluded that Stewart was forced to represent conflicting interests, the Court did *not* reverse the conviction of Kretske, Stewart's other client, because Kretske failed to "show that the denial of Glasser's constitutional rights *prejudiced* [him] in some manner." 315 U. S., at 76 (emphasis added). Second, the Court justified the reversal of Glasser's conviction, in part, by emphasizing the weakness of the Government's evidence against him; with guilt a close question, "error, which under some circumstances *would not be ground for reversal,* cannot be brushed aside as immaterial, since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt." *Id.,* at 67 (emphasis added). Assessing the strength of the prosecution's evidence against the defendant is, of course, one step in applying a harmless-error standard. See *Schneble* v. *Florida,* 405 U. S. 427 (1972); *Harrington* v. *California,* 395 U. S. 250 (1969).

We read the Court's opinion in *Glasser,* however, as holding that whenever a trial court improperly requires joint representation over timely objection reversal is automatic. The *Glasser* Court stated:

> "To determine the precise degree of prejudice sustained by Glasser as a result of the [district] court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. Cf. *Snyder* v. *Massachusetts,* 291 U. S. 97, 116; *Tumey* v. *Ohio,* 273 U. S. 510, 535; *Patton* v. *United States,* 281 U. S. 276, 292." 315 U. S., at 75–76.

This language presupposes that the joint representation, over his express objections, prejudiced the accused in some degree. But from the cases cited it is clear that the prejudice is presumed regardless of whether it was independently shown. *Tumey* v. *Ohio,* 273 U. S. 510 (1927), for example, stands for the principle that "[a] conviction must be reversed if [the asserted trial error occurred], even if no particular prejudice is shown and even if the defendant was clearly guilty." *Chapman* v. *California,* 386 U. S. 18, 43 (1967) (STEWART, J., concurring); see also *id.,* at 23, and n. 8 (opinion of the Court). The Court's refusal to reverse Kretske's conviction is not contrary to this interpretation of *Glasser.* Kretske did *not* raise his own Sixth Amendment challenge to the joint representation. 315 U. S., at 77; see Brief for Petitioner Kretske in *Glasser* v. *United States,* O. T. 1941, No. 31. As the Court's opinion indicates, some of the codefendants argued that the denial of Glasser's right to the effective assistance of counsel prejudiced them as alleged co-conspirators. 315 U. S., at 76–77. In that context, the Court required a showing of prejudice; finding none, it affirmed the convictions of the codefendants, including Kretske.

Moreover, this Court has concluded that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman* v. *California, supra,* at 23. Accordingly, when a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic. *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Hamilton* v. *Alabama,* 368 U. S. 52 (1961); *White* v. *Maryland,* 373 U. S. 59 (1963).

That an attorney representing multiple defendants with conflicting interests is physically present at pretrial proceedings, during trial, and at sentencing does not warrant departure from this general rule. Joint representation of conflicting interests is suspect because of what it tends to prevent

the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.

Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, even-handed application. In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. Compare *Chapman* v. *California, supra,* at 24–26, with *Hamling* v. *United States,* 418 U. S. 87, 108 (1974), and *United States* v. *Valle-Valdez,* 554 F. 2d 911, 914–917 (CA9 1977). But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would

be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE REHNQUIST join, dissenting.

While disavowing a *per se* rule of separate representation, the Court holds today that the trial judge's failure in this case "either to appoint separate counsel or take adequate steps to ascertain whether the risk was too remote to warrant separate counsel" worked a violation of the guarantee of "assistance of counsel" embodied in the Sixth and Fourteenth Amendments. The Court accepts defense counsel's representations of a possible conflict of interests among his clients and of his inability to conduct effective cross-examination as being adequate to trigger the trial court's duty of inquiry. The trial court should have held an appropriate hearing on defense counsel's motions for separate representation, but our task is to decide whether this omission assumes the proportion of a constitutional violation. Because I cannot agree that, in the particular circumstances of this case, the court's failure to inquire requires reversal of petitioners' convictions, and because the Court's opinion contains seeds of a *per se* rule of separate representation merely upon the demand of defense counsel, I respectfully dissent.

I

It is useful to contrast today's decision with the Court's most relevant previous ruling, *Glasser* v. *United States,* 315 U. S. 60 (1942). In that case, the trial court ordered Glasser's

retained lawyer, Stewart, to represent both Glasser and his codefendant, Kretske, even though Stewart had identified "inconsistency in the defense" that counseled against joint representation. *Id.*, at 68. This Court reversed Glasser's conviction because his lawyer had been required to undertake simultaneous representation of "conflicting interests." *Id.*, at 70. The *Glasser* decision did not rest only on the determination that "[t]he possibility of the inconsistent interests of Glasser and Kretske [had been] brought home to the court . . . ." *Id.*, at 71. Instead, the Court proceeded to find record support for Glasser's claim of "impairment" of his Sixth Amendment right to assistance of counsel. The evidence "indicative of Stewart's struggle to serve two masters [could not] seriously be doubted." *Id.*, at 75; see also *id.*, at 76.

Today's decision goes well beyond the limits of *Glasser*. I agree that the representations made by defense counsel in this case, while not as informative as the affidavit of counsel Stewart in *Glasser*, were sufficient to bring into play the trial court's duty to inquire further into the possibility of "conflicting interests." I question, however, whether the Constitution is violated simply by the failure to conduct that inquiry, without any additional determination that the record reveals a case of joint representation in the face of "conflicting interests." The Court's approach in this case is not premised on an ultimate finding of conflict of interest or ineffective assistance of counsel. Rather, it presumes prejudice from the failure to conduct an inquiry, equating that failure with a violation of the Sixth Amendment guarantee. The justification for this approach appears to be the difficulty of a *post hoc* reconstruction of the record to determine whether a different outcome, or even a different defense strategy, might have obtained had the trial court engaged in the requisite inquiry and ordered separate representation. Although such difficulty may be taken into account in the allocation of the burden of persuasion on the questions of conflict and prejudice, see *infra*,

at 495–496, I am not convinced of the need for a prophylactic gloss on the requirements of the Constitution in this area of criminal law. Cf. *Miranda* v. *Arizona,* 384 U. S. 436 (1966).

Several other aspects of the Court's opinion suggest a rule of separate representation upon demand of defense counsel. The Court leaves little room for maneuver for a trial judge who seeks to inquire into the substantiality of the defense counsel's representations. Apparently, the trial judge must order separate representation unless the asserted risk of conflict "was too remote to warrant separate counsel," *ante,* at 484, a formulation that suggests a minimal showing on the part of defense counsel. The Court also offers the view that defense counsel in this case could not be expected to make the kind of specific proffer that was present in *Glasser* because of "a risk of violating, by more disclosure, his duty of confidentiality to his clients." *Ante,* at 485. Although concededly not necessary to a decision in this case, the Court then states that the trial court's inquiry must be conducted "without improperly requiring disclosure of the confidential communications of the client." *Ante,* at 487, and n. 11.[1] When these intimations are coupled with the Court's policy of automatic reversal, see *ante,* at 488–489, the path may have been cleared for potentially disruptive demands for separate counsel predicated solely on the representations of defense counsel.

---

[1] I do not propose to resolve here the tension between the assertion of a constitutional right and a claim of lawyer-client privilege. But I reject the assumption that defense counsel will be unable to discuss in concrete terms the difficulties of joint representation in a particular case without betraying confidential communications. Nor am I persuaded that the courts will be unable to pursue a meaningful inquiry without insisting on a breach of confidentiality. Experience in the somewhat analogous area of claims of exemption from the disclosure requirements of the Freedom of Information Act, 5 U. S. C. § 552 (1976 ed.), supports this point. See, *e. g., EPA* v. *Mink,* 410 U. S. 73, 92–94 (1973); *Vaughn* v. *Rosen,* 157 U. S. App. D. C. 340, 484 F. 2d 820 (1973), cert. denied, 415 U. S. 977 (1974).

## II

Recognition of the limits of this Court's role in adding protective layers to the requirements of the Constitution does not detract from the Sixth Amendment obligation to provide separate counsel upon a showing of reasonable probability of need. In my view, a proper accommodation of the interests of defendants in securing effective assistance of counsel and that of the State in avoiding the delay, potential for disruption, and costs inherent in the appointment of multiple counsel,[2] can be achieved by means which sweep less broadly than the approach taken by the Court. I would follow the lead of the several Courts of Appeals that have recognized the trial court's duty of inquiry in joint-representation cases without minimizing the constitutional predicate of "conflicting interests."[3]

---

[2] Each addition of a lawyer in the trial of multiple defendants presents increased opportunities for delay in setting the trial date, in disposing of pretrial motions, in selecting the jury, and in the conduct of the trial itself. Additional lawyers also may tend to enhance the possibility of trial errors. Moreover, in light of professional canons of ethics, cf. ABA Code of Professional Responsibility, DR 5-105 (D) (1969); *Allen* v. *District Court*, 184 Colo. 202, 205-206, 519 P. 2d 351, 353 (1974); Tr. of Oral Arg. 6-7, 15-16, a rule requiring separate counsel virtually upon demand may disrupt the operation of public defender offices.

[3] See, *e. g., United States* v. *Carrigan*, 543 F. 2d 1053, 1055-1056 (CA2 1976):

"The mere representation of two or more defendants by a single attorney does not automatically give rise to a constitutional deprivation of counsel. It is settled in this Circuit that some specific instance of prejudice, some real conflict of interest, resulting from a joint representation, must be shown to exist before it can be said that an appellant has been denied the effective assistance of counsel. *United States* v. *Mari*, . . . 526 F. 2d [117,] 119 [(CA2 1975)]; *United States* v. *Vowteras*, 500 F. 2d 1210, 1211 (2d Cir.), cert. denied, 419 U. S. 1069 . . . (1974); *United States* v. *Wisniewski*, 478 F. 2d 274, 281 (2d Cir. 1973); *United States* v. *Lovano*, 420 F. 2d 769, 773 (2d Cir.), cert. denied, 397 U. S. 1071 . . . (1970). In all of these cases the trial court had carefully inquired as to the possibility of prejudice and elicited the personal responses of the de-

Ordinarily defense counsel has the obligation to raise objections to joint representation as early as possible before the commencement of the trial.[4]  When such a motion is made, supported by a satisfactory proffer, the trial court is under a duty to conduct "the most careful inquiry to satisfy itself that no conflict of interest would be likely to result and that the parties involved had no valid objection." *United States* v. *DeBerry*, 487 F. 2d 448, 453 (CA2 1973).  At that hearing, the burden is on defense counsel, because his clients are in possession of the relevant facts, to make a showing of a reasonable likelihood of conflict or prejudice.  Upon such a showing, separate counsel should be appointed.  "If the court has carried out this duty of inquiry, then to the extent a defendant later attacks his conviction on grounds of conflict of interest arising from joint representation he will bear a heavy burden indeed of persuading" the reviewing court "that he was, for that reason, deprived of a fair trial." *United States* v. *Foster*, 469 F. 2d 1, 5 (CA1 1972).  If, however, a proper and timely motion is made, and no hearing is held, "the lack of satisfactory judicial inquiry shifts the burden of proof on the question of prejudice to the Government." *United States* v. *Carrigan*, 543 F. 2d 1053, 1056 (CA2 1976).

Since the trial judge in this case failed to inquire into the

---

fendants involved.  Here the record is barren of any inquiry by the court or any concern by the Government.

"In *United States* v. *DeBerry, supra,* 487 F. 2d, at 453–54, we . . . noted with approval the view of the First Circuit in *United States* v. *Foster,* 469 F. 2d 1, 5 (1st Cir. 1972), that the lack of satisfactory judicial inquiry shifts the burden of proof on the question of prejudice to the Government. 487 F. 2d at 453 n. 6."

[4] Since a proper, timely objection was interposed in this case, there is no occasion to identify the circumstances which might trigger a duty of inquiry in the absence of such a motion.

Of course, a later motion may be appropriate if the conflict is not known or does not become apparent before trial proceeds.  To guard against strategic disruption of the trial, however, the court may require a substantial showing of justification for such midtrial motions.

substantiality of defense counsel's representations of September 4, 1975, *ante*, at 484 n. 7, the burden shifted to the State to establish the improbability of conflict or prejudice. I agree that the State's burden is not met simply by the assertion that the defenses of petitioners were not mutually inconsistent, for that is not an infrequent consequence of improper joint representation. Nevertheless, the record must offer some basis for a reasonable inference that "conflicting interests" hampered a potentially effective defense. See, *e. g.*, *United States* v. *Donahue*, 560 F. 2d 1039, 1044–1045 (CA1 1977). Because the State has demonstrated that such a basis cannot be found in the record of this case,[5] I would affirm the judgment of the Supreme Court of Arkansas.

---

[5] It is unlikely that separate counsel would have been able to develop an independent defense in this case because of the degree of overlap in the identification testimony by the State's witnesses and because of the consistency of the alibis advanced by petitioners. Campbell and Welch, who are half brothers, both used the same alibi. Since Campbell was not identified as an actual participant in the rapes, it might be argued that separate counsel would have encouraged him to endorse his earlier confession in an effort to show that he was less culpable than his two codefendants. But, given his common alibi with Welch, Campbell would have found it difficult to extricate himself from his half brother's cause. In any event, such an argument would have been an appeal to jury nullification because, as the court below noted, Campbell's denial of direct involvement in the rapes "had no effect on his guilt as a principal." 260 Ark. 250, 256, 539 S. W. 2d 435, 439 (1976). Conceivably Holloway, who gave an independent alibi, might have wished to argue that while the State had apprehended two of the real culprits, his arrest was due to a mistaken identification. It is most unlikely that separate counsel would have succeeded on such a tack because each witness who identified Holloway also identified one of the other two codefendants. Moreover, petitioners do not argue in this Court that joint representation impeded effective cross-examination of the State's witnesses. In sum, this is not a case where an inquiry into the possibility of "conflicting interests" reasonably might have revealed a basis for separate representation.