**UNITED STATES of America ex rel. Orvid V. GARRETT, Petitioner,**

v.

**Michael P. LANE, Warden, Respondent.**

Civ. No. 78–4305.

United States District Court, E. D. Illinois.

Feb. 7, 1979.

Patricia L. Morris, Asst. State Appellate Defender, Mount Vernon, Ill., for petitioner.

James A. Devine, Asst. Atty. Gen., Springfield, Ill., for respondent.

## ORDER

FOREMAN, Chief Judge:

Before the Court are cross motions for summary judgment.

Petitioner, currently incarcerated at Menard Correctional Center, filed this writ of habeas corpus contending that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. This claim is based on the contention that his defense counsel moved for appointment of separate counsel for either petitioner or one of his co-defendants. Such motion was denied and because of that, a conflict of interests was present that precluded the petitioner's counsel from effectively representing him.

■ 28 U.S.C. § 2254(a) provides in substance that a district court shall entertain an application for a writ of habeas corpus pursuant to the judgment of a state court only on the grounds that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. It has been recognized by the courts that deni-

al of the effective assistance of counsel is the denial of a fundamental right guaranteed by the Sixth Amendment to the Constitution; therefore, it would qualify on the constitutional level as grounds for habeas corpus relief. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

On February 15, 1976, near midnight, petitioner, Orvid Garrett, and two companions, Helen Watts and Calvin Collier, were arrested for armed robbery and unlawful use of weapons. The public defender was appointed to represent all three defendants and he made a timely pretrial motion for appointment of separate counsel for Helen Watts or for petitioner and Calvin Collier because of a conflict of interests that would be created by representing all three defendants. In support of this, the public defender stated in his motion:

". . . 2. That defendant Helen Watts, made statements which tend to incriminate her and which may prove harmful to defendants Garrett and Collier.

"3. That counsel, *after investigating this cause* (emphasis added), has determined that a conflict exists between defendants Collier and Garrett and their co-defendant, Helen Watts, which would not permit counsel to give individual loyalty to each defendant."

At the hearing on the motion, the trial judge merely read the statement of the alleged admission and without making any further investigation into the matter, denied the motion to appoint separate counsel:

"MR. HOOD (Prosecutor): Your honor, there is in the State's discovery materials a quote from the defendant which if read, does tend to incriminate her and it doesn't make any admission of the other two defendants whatsoever.

"MR. GRACE (Public Defender): The statement in *combination with the other facts of this case* (emphasis added) and

that's all that the discovery indicates at the time of apprehension . . . The combination of the defendants Collier and Garrett being present with Miss Watts who has allegedly made the statement to Trooper Wright would seem to me to be a conflict in which, if that statement is used, that in combination with the fact that they were in fact together at the time of apprehension would tend to incriminate them as well.

"THE COURT: The Court has examined the alleged statement and the Court at this time is going to deny the motion for appointment of separate counsel. I don't think it falls under the rules of the Supreme Court as the Court understands them which would require the appointment of separate counsel. The motion is denied. The Court is now setting this case on the week of the April 19th trial docket."

After the judge's denial of the motion the issue of conflict of interests was raised again by defense counsel on post trial motion.

As indicated by Judge Moran, in his dissenting opinion in the Illinois Appellate Court, the evidence against Ms. Watts was much greater than that against petitioner. In addition to the incriminating statement made by Watts, the service station attendant clearly identified Watts who was unmasked and stood next to the attendant with a gun pointed at his chest. The attendant testified that the individual he identified as petitioner Garrett was wearing a turtleneck sweater pulled up to nose level. This matter of identification is a crucial matter to which defense counsel's efforts to impeach should not be hindered by a fear of prejudice to a co-defendant whom he also represents. In addition to the identification problem, other evidence was significantly greater against Watts than Garrett. Watts admitted obtaining money from the station, had the money in her possession, and admitted the weapons involved were hers.

The Supreme Court of the United States recently decided a case based on a very similar factual setting. In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), The Court held that where defense counsel made timely motion for appointment of separate counsel based on a possible conflict of interest, the trial judge was under a duty to either appoint separate counsel or take adequate steps to ascertain whether the risk of a conflict of interests was too remote to warrant appointment of separate counsel, 435 U.S. at 484, 98 S.Ct. 1173. The Court held that the trial judge in *Holloway* failed to take adequate steps to ascertain whether the possibility of a conflict of interests was too remote to warrant separate counsel.

The Court based its holding on a number of considerations. Among these were that an attorney is in the best position professionally and ethically to determine when a conflict of interests exists or will probably develop in the course of the trial. Further, that as an officer of the Court, he is under a duty to advise the Court at once of the problem and when an attorney addresses the Court, his declaration is "virtually made under oath." 435 U.S. at 486, 98 S.Ct. 1173.)

The *Holloway* Court quoted with approval *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942):

"Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by *insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.*" 315 U.S. at 71, 76, 62 S.Ct. at 467 (emphasis added). 435 U.S. at 484, 485, 98 S.Ct. 1173 at 1179.

After determining that the trial court had failed to take adequate steps to ascertain whether the possibility of a conflict of interests existing was too remote, The Court turned to the question of whether the error committed required a reversal of the defendant's conviction. The Court cited *Glasser* and went on to hold:

. . . . that whenever a trial court improperly requires joint representation over timely objection reversal is automatic.

The Court felt that the Sixth Amendment guarantee of effective assistance of counsel was too vitally important to attempt to ". . . indulge in nice calculations as to the amount of prejudice arising from its denial" 435 U.S. at 488, 98 S.Ct. at 1181. In further support of this presumption of prejudice, The Court pointed to the unique problems created by forcing a defense counsel to represent clients with possibly conflicting interests. The Court saw the harm not in what the attorney did, but instead, in what he was forced to refrain from doing. The Court cited numerous examples of how an attorney might be prevented from asserting the rights of one defendant in this type of setting:

> For example in this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters. 435 U.S. at 490, 98 S.Ct. at 1181–1182.

This type of situation makes it impossible for a Court to view the record and intelligently determine the impact of a conflict. Therefore, an inquiry into a claim that error was harmless would require "unguided speculation" and The Court refused to do that.

█ The *Holloway* case makes apparent a trial judge's solemn duty to insure that each defendant is given effective assistance of counsel. In the presence case, the trial judge was informed of the possible conflict not only in reference to the co-defendant's incriminating statement but also as to other matters which were revealed to defense counsel in investigating his cause. The *Holloway* Court saw inherent in this conflict of interest setting the problem that a defense attorney faces in attempting to strike a balance between informing the Court of a possible conflict while at the same time protecting the confidentiality of the attorney-client relationship. In the instant case, defense counsel was faced with this very problem of adequately informing the judge of the conflict while not revealing confidential information received from his client. The defense counsel adequately apprised the Court of the conflict he felt his investigation had revealed. The Court merely read the one statement, denied the motion and immediately set the case for trial. The judge took absolutely no steps to ascertain the extent of any possible conflict and did not inquire of the defense counsel as to the basis for his contention.

█ Under the *Holloway* holding, once an attorney indicates to the Court a possible conflict of interests, the Court is obligated to either appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. The trial judge did neither in this case. The defense counsel offered to elaborate, but the Court took no further steps.[1]

1. The transcript of the motion hearing indicates that because of a delay in receiving discovery, there was some confusion during the motion hearing. The following conversation transpired:

MR. GRACE: Your honor, first of all, I would ask leave to amend Paragraph 2 by interlineation. In reading over the discovery given to us this morning by the State, I would ask leave to amend that the discovery supplied to the defendants indicates that an oral statement was made by Miss Watts to one of the officers involved in the arrest and apprehension of these defendants which would if proof of that statement is given at trial, tends to incriminate herself and in combination with

The respondent's brief submitted to this Court attempts to distinguish the *Holloway* case from the present case. Respondent claims that in *Holloway* the issue of a conflict was raised a number of times, whereas here petitioner has only raised it on one occasion. The *Holloway* Court addressed this very issue and stated:

> It is arguable, perhaps that defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail. As to the former, however, the trial court's responses hardly encouraged pursuit of the separate counsel claim; and as to presenting the basis for that claim in more detail, defense was confronted with a risk of violating, by more disclosure, his duty of confidentiality to his client. 435 U.S. at 485, 98 S.Ct. at 1179.

■ Although it is not entirely clear that defense counsel presented a true conflict of interests situation to the Court, that is not the issue as indicated in *Holloway*. In light of the attorney's duty to protect the confidentiality of his attorney-client relation, he need not fully explain the matter to the Court but merely make the matter known to the Court. In this case, the attorney informed the judge and his motion was immediately denied. The Court does not see how the attorney could have further placed the Court on notice. The Court then took no other steps to ascertain whether a conflict existed.

In light of the differing degrees of evidence against co-defendants and the judge's failure to take adequate steps to ascertain whether a conflict existed, this Court hereby GRANTS petitioner's writ of habeas corpus. The Court orders that petitioner be given a new trial on this matter or released from custody within sixty (60) days of this order.

IT IS SO ORDERED.

other facts in this case would tend to also incriminate Mr. Collier and Mr. Garrett and if the court wishes I could elaborate on it. COURT: I don't want you to elaborate yet until I hear from Mr. Hood on what is in—I assume that the discovery came from Mr. Hood's file?

After some further discussion Mr. Grace stated his motion (quoted in the text of the order) and the Court denied his motion after reading the statement by co-defendant Watts. The judge's immediate denial appeared to foreclose any further discussion on the conflict of interests issue.