No. 78–5873. IRVING *v.* MISSISSIPPI. Sup. Ct. Miss. Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

I adhere to my view that the death penalty is unconstitutional under all circumstances. *Furman* v. *Georgia,* 408 U. S.

238, 314 (1972) (MARSHALL, J., concurring); *Gregg* v. *Georgia,* 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). I would therefore grant certiorari and vacate the death sentence on this basis alone. However, because the Mississippi Supreme Court's ruling on an issue of joint representation appears inconsistent with this Court's prior decisions, I believe certiorari should be granted on that ground as well.

Petitioner John Irving was indicted in Pontotoc County, Miss., on July 7, 1976, for capital murder. Both petitioner and a separately indicted accomplice, Keith Givhan, retained the same counsel. On November 8, 1976, the day before petitioner's trial, his attorney filed a motion to withdraw because of a conflict of interest. Counsel did, however, express his willingness to continue representing Givhan, whose trial was scheduled for the following week. After a hearing, the Circuit Court denied the motion and petitioner's case proceeded to trial. A jury found petitioner guilty as charged and sentenced him to death. The Mississippi Supreme Court affirmed. 361 So. 2d. 1360 (1978).

In the affidavit supporting his motion to withdraw, petitioner's counsel identified several potential sources of conflict. Each defendant had given an inculpatory statement implicating the other. Also, during the period of pretrial incarceration, each had developed inconsistent theories of defense. Finally, plea negotiations with the local district and county attorneys had raised the possibility of a bargain in one case but not the other. Under those circumstances, counsel averred that he could not, based on his "reading of *Glasser* [v. *United States,* 315 U. S. 60 (1942),] advise either defendant . . . as to what posture [he] should assume." Record 53.

In *Glasser,* this Court stated: "[T]he 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." 315 U. S., at 70. Just last Term, in

*Holloway* v. *Arkansas*, 435 U. S. 475 (1978), we reaffirmed that principle and noted:

> "[S]ince the decision in *Glasser*, most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. . . . An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' *State* v. *Davis*, [110 Ariz. 29, 31, 514 P. 2d 1025, 1027 (1973)]. . . . [A]ttorneys are officers of the court, and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' *State* v. *Brazile*, [226 La. 254, 266, 75 So. 2d 856, 860–861 (1954)]. (Emphasis deleted.) We find these considerations persuasive." *Id.*, at 485–486 (footnotes omitted).

Particularly where, as here, a defendant is on trial for his life, an attorney's judgment as to potential conflicts should carry special force.

Notwithstanding *Holloway*'s clear directive and the nature of the sentence imposed, the Mississippi Supreme Court sustained the refusal to permit counsel's withdrawal. In so ruling, the court relied on petitioner and Givhan's failure to testify, and on the absence of any clear indication that counsel "would have defended any differently or would have approached the defense of the case on another basis had he not been representing Givhan." 361 So. 2d, at 1365. Because the record did not "reflect any prejudice or harm resulting to [petitioner] on account of the alleged conflict of interest," *ibid.*, the court below found no constitutional infirmity.

Yet it was precisely this form of analysis that we rejected in *Glasser* and again in *Holloway*. *Glasser* unequivocally held that "[t]he right to have the assistance of counsel is too

fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U. S., at 76. After quoting this passage with approval, the *Holloway* Court made clear that where joint representation occurs over a defendant's express objection, "prejudice is presumed regardless of whether it [is] independently shown." 435 U. S., at 489. For the danger presented by a conflict of interest arises not simply from what an advocate does, which may be evident from the record, but from what he "finds himself compelled to *refrain* from doing," which may not be so readily apparent. *Id.,* at 490. To assess the effect of incompatible interests on all of an attorney's strategies at trial and in plea negotiations would, as we concluded in *Holloway,* be "virtually impossible." *Id.,* at 491.

Here, however, the Mississippi Supreme Court professed itself able to accomplish what *Holloway* explicitly recognized as beyond the competence of a reviewing tribunal. On this record, I cannot share the court's confidence that counsel would have approached the defense no differently had he represented only petitioner. More to the point, I believe that such speculation is inappropriate under *Holloway* and unsupportable in a capital case. Surely where a defendant's life is at stake, he is entitled to assistance from an attorney whose loyalty is beyond question.

I therefore dissent from the denial of certiorari.