**Joseph Anthony CHARETTE,**
**Petitioner–Appellant,**

v.

**Ricky BELL; Charles Burson,**
**Respondents–Appellees.**

No. 02–5882.

United States Court of Appeals,
Sixth Circuit.

July 29, 2004.

Caryll S. Alpert, Asst. F.P. Defender, Hugh M. Mundy, Nashville, TN, for Petitioner–Appellant.

Alice B. Lustre, Asst. Atty. General, Nashville, TN, for Respondents–Appellees.

Before SUHRHEINRICH, BATCHELDER, and COLE, Circuit Judges.

OPINION

COLE, Circuit Judge.

Petitioner–Appellant Joseph Anthony Charette appeals the district court's denial of his petition for habeas corpus relief. Charette's petition for habeas relief, filed pursuant to 28 U.S.C. § 2254, alleged that his trial counsel, Alan DeBusk, had a conflict of interest that resulted in a violation of Charette's Sixth Amendment right to counsel. For the reasons that follow, we AFFIRM the denial of Charette's habeas petition.

I. BACKGROUND

Charette's indictment stems from a shooting incident that took place on December 25, 1987, at the Wrangler Bar—a country and western nightclub in Nashville, Tennessee. Charette and Kenneth Beasley were drinking at the Wrangler, during which time Beasley either pushed or stumbled into several other people at the club. At that point, Beasley was asked to leave by a bouncer. As he departed, Beasley became involved in an altercation with the bouncer, but left the bar along with Charette, without serious incident. After their departure, it was reported that Beasley and Charette were involved in a fight with others in the parking lot. Beasley attacked one of the Wrangler employees with a knife, stabbing him in the abdomen. Charette and Beasley then attempted to flee the scene. As they fled, Charette fired several shots into the crowd, striking Bobby Elkins in the arm and Craig Mullinaks in the leg. The police were called to the scene and arrested both Charette and Beasley.

Charette was convicted of one count of assault with intent to commit first-degree murder and two counts of aggravated assault. Pursuant to his conviction, Charette was sentenced to fifty-two years in prison. The convictions were affirmed by the Tennessee Court of Criminal Appeals on March 15, 1990, but the sentence was reduced to forty-seven years imprisonment. Permission to appeal was denied by the Tennessee Supreme Court, on June 11, 1990. Charette then sought post-conviction relief. Following a hearing, the trial court denied such relief. This judgment was affirmed by the Court of Criminal Appeals on February 24, 1995. Permission to appeal was denied on July 10, 1995.

On September 18, 1995, Charette filed a *pro se* petition for a writ of habeas corpus. The district court granted summary judgment in favor of the state as to all claims except the alleged denial of effective assistance of counsel due to a conflict of interest. After remanding this issue to the magistrate judge for further proceedings, the district court granted summary judgment in favor of the state on the ineffective assistance of counsel claim as well, thereby dismissing Charette's habeas petition. This court granted Charette a certificate of appealability limited to the claim of ineffective assistance of counsel due to the alleged conflict of interest.

Charrette argues that he was denied the effective assistance of counsel because his attorney had a conflict of interest. This purported conflict of interest arose prior to trial, when Charette's father filed a complaint against DeBusk, alleging that he had conspired with state prosecutors to deny Charette a speedy trial. As a consequence of this complaint, the Federal Bureau of Investigation initiated an investigation, during which they interviewed DeBusk.

During the FBI's investigation, DeBusk filed a motion to withdraw as counsel on the ground that there was a conflict of interest between himself and Charette. At the hearing on that motion, the trial court asked DeBusk, "[A]s an officer of the court, do you feel like either your professional situation, in and of itself, or your working relationship with Mr. Charette has been compromised such that you cannot continue to represent him?" In response, DeBusk stated, "Your Honor, I thought about this at long length, and I would respectfully state to the Court that I do feel that [the charges and the investigation have] compromised the circumstance from that situation. It would be extremely difficult to proceed forward at this point." The trial court denied DeBusk's withdrawal motion. Subsequently, the FBI's investigation concluded that there was no basis to the charges that had been filed against DeBusk on Charette's behalf.

### III. ANALYSIS

#### A. Standard of Review

Because Charette initially filed his habeas petition on September 18, 1995, the provisions of the Anti–Terrorism and Effective Death Penalty Act of 1996 do not apply. We review the district court's denial of Charette's petition *de novo,* but review the district court's factual findings for clear error. *Rickman v. Bell,* 131 F.3d 1150, 1153 (6th Cir.1997).

#### B. Ineffective Assistance of Counsel

#### 1. Burden of Proof

Charette contends that his Sixth Amendment right to counsel was violated by DeBusk's conflict of interest. In order to establish a violation of his Sixth Amendment right to counsel, Charette must show that the attorney's performance was deficient, "meaning that counsel made errors

so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Riggs v. United States,* 209 F.3d 828, 831 (6th Cir.2000) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Charette must also show that "the attorney's deficient performance was so prejudicial that it deprived the defendant of a fair trial, a trial whose result is reliable." *Id.*

In the context of alleged conflicts of interest, however, this rule has been modified slightly. Where a defendant alleges a conflict of interest, prejudice may be presumed where a defendant can show: (1) the existence of an actual conflict of interest; and (2) that the conflict of interest adversely affected his lawyer's performance. "An actual conflict may be demonstrated by pointing to specific instances in the record that indicate that the attorney made a choice between possible alternative courses of action ... If he did not make such a choice, the conflict remained hypothetical." *Id.* To establish that an actual conflict adversely affected his lawyer's performance, Charette must show a causal connection between the conflict alleged and the attorney's performance. *Id.* at 833.

#### 2. Actual Conflict of Interest

 It appears that, at least at some point, there existed a conflict of interest between Charette and DeBusk. Charette contends that the conflict between himself and DeBusk caused DeBusk to misrepresent his readiness for trial. This arose after the state, taking Charette's complaints against DeBusk to be a speedy trial request, filed a motion for an earlier trial date. On April 11, 1988, when queried about his readiness for trial, DeBusk maintained that he was prepared for trial and

that he would have been ready for the original March 8, 1988 trial date.

DeBusk's representations to the trial court contradict a letter that he sent to Charette on March 9, 1988. That letter appears to indicate that DeBusk was not prepared for the earlier trial date. Charette contends that an admission by De-Busk that he had not been prepared for the March 8 trial date would have reflected poorly on DeBusk, as he was then under investigation by the FBI. Charette argues that this misrepresentation was compounded by the fact that DeBusk failed to object to the state's motion for an earlier trial date, thereby magnifying his failure to prepare for trial. Charette has pointed to a "specific instance[ ] in the record" that indicates that DeBusk made a choice between what was required to best represent Charette (i.e., objecting to the state's motion for an earlier trial date) and protecting himself during the FBI's investigation by inaccurately stating that he had been prepared for trial. *Cuyler v. Sullivan*, 446 U.S. at 348–50, 100 S.Ct. 1708 (1980). Therefore, we conclude that, at least for a period of time, an actual conflict of interest existed.

### 3. Adversely Affected Counsel's Performance

Having concluded that an actual conflict existed, we turn to the question of whether this conflict deprived Charette of a fair trial such that its results would be deemed unreliable. Here, we find that Charette has provided no additional specific evidence that would allow the court to come to such a conclusion.

First, Charette contends that this case is governed by the exception to *Strickland's* requirements, as articulated in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), in which the Supreme Court held that where a trial court, without inquiry, had denied counsel's objections to serving as counsel to three co-defendants and had refused to allow counsel to cross-examine any of the defendants on behalf of the other two, prejudice is presumed and an automatic reversal results. This argument ignores the Supreme Court's subsequent holding in *Mickens v. Taylor*, 535 U.S. 162, 168, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), which read *Holloway*'s automatic reversal rule to apply "only where defense counsel is forced to represent co-defendants over his timely objection, unless the trial court has determined that there is no conflict." There, the Court rejected a defendant's assertion that the trial court's failure to inquire into a potential conflict of interest, about which it knew or should have known, required an automatic reversal. We see no reason why Bell's conflict of interest claim rises to the level of *Holloway* such that he should be relieved of the duty to establish that this conflict of interest adversely affected counsel's performance.

Alternatively, Charette argues that the fact that DeBusk misrepresented his readiness for trial and agreed to an earlier trial date in an attempt to protect himself during the FBI's investigation proves two things: (1) that DeBusk was not prepared for either pre-trial negotiations or the actual trial; and (2) that DeBusk's lack of preparation constituted ineffective assistance of counsel, because the conflict that gave rise to it taints the entire trial preparation process such that he is relieved of the burden of supporting his allegations with specific instances of how the conflict is connected to the trial's outcome. While there might be some logic to this argument, Charette is not relieved from substantiating his allegations with some specificity.

Charette contends that DeBusk's performance at trial compromised his right to

a fair trial. He makes three specific, yet undetailed, allegations. They are: (1) DeBusk wrongly advised Charette not to testify because he would be cross-examined about his prior record; (2) DeBusk failed to prepare adequately for trial by failing, *inter alia,* to investigate and interview witnesses to the incident at the Wrangler Bar; and (3) DeBusk pleaded Charette guilty to aggravated assault, thereby conceding all elements of the charged offense with the exception of specific intent to commit first-degree murder.

Regarding Charette's first claim, there is simply no specificity in the allegation that connects this incident to the conflict of interest. In *Riggs*, this court stated that a petitioner is required to establish a connection between an conflict and his attorney's ineffective assistance. The existence of a conflict, on the one hand, and an allegation of ineffective assistance on the other, without more, are insufficient. Charette is required to show how the conflict actually impaired his defense before this court is obligated to find prejudice. Charette has provided the court with no such argument. Absent the identification of "an actual lapse in representation," traceable to the alleged conflict, Charette's argument on this ground fails. *Cuyler v. Sullivan,* 446 U.S. at 349, 100 S.Ct. 1708.

Charette's claim that DuBusk failed to prepare adequately for trial, by failing to interview various, unnamed witnesses, suffers under the same defect as the argument above. Charette has provided the court with no facts or arguments that connect the alleged conflict to DeBusk's failure to investigate or interview the unnamed witnesses whom he references. Although Charette asserts that there were witnesses who should have been interviewed by DeBusk, he does not point to any specific witnesses or what their testimony might have added to Charette's de-

fense. Charette has also failed to provide the court with any argument regarding how this failure adversely affected his right to a fair trial. Because Charette has identified no witness who would have presented an alternative version of the events of December 25, 1987, or how this testimony would have affected the trial's outcome, there is simply no basis for concluding that DeBusk's failure to call other witnesses constitutes ineffective assistance to Charette. Therefore, for the same reason, this claim fails.

■ Finally, Charette's argument that DeBusk caused him to plead guilty to lesser offenses appears to have been included for the first time before this court. Charette cannot now amend his petition to include this claim.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the district court's denial of Charette's petition for habeas relief.