UNITED STATES of America

v.

Dennis E. PRYBA, Barbara A. Pryba,
Jennifer G. Williams, and
Educational Books, Inc.

Crim. No. 87–00208–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 8, 1987.

See also, D.C., 674 F.Supp. 1504 and 674 F.Supp. 1518.

Lawrence Leiser, Asst. U.S. Atty., Alexandria, Va., for U.S.

Thomas J. Morris, Jr., Arlington, Va., for Dennis E. Pryba.

William B. Cummings, Alexandria, Va., for Barbara A. Pryba.

Plato Cacheris, Washington, D.C., for Jennifer G. Williams.

J. Frederick Sinclair, Alexandria, Va., for Educational Books, Inc.

## MEMORANDUM OPINION

ELLIS, District Judge.

This twelve count RICO indictment charges four named defendants, *inter alia*, with engaging in a pattern of racketeering in connection with the sale and distribution of a variety of allegedly obscene materials.[1] The four defendants are represented by separate retained counsel. The United States, citing only an undocumented newspaper report, asserts its belief that all or a portion of defendants' legal fees are being paid for, not by defendants, but by third parties, specifically a Ruben Sturman of Cleveland, Ohio.

This possibility, the government claims, requires this Court to hold a hearing to determine whether a conflict of interest exists. *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), and *Simpson v. Georgia*, 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981), are said to compel this result. This is not so; these decisions will not bear the weight of the government's position; they are, at least for now, inapposite.

*Wood* grew out of a state prosecution on two counts of distributing obscene materials in violation of Georgia Code § 26–2101 (1978). Defendants there were represented by the same lawyer paid for and provided by their employer. They were tried, convicted and sentenced to 12 month jail terms and fines of $5000 each. Defendants were allowed immediate probation, one condition of which required defendants to make $500 per month installment payments on their fines. No payments were made and, after three months, the authorities sought to revoke the probations. At a revocation hearing, defendants admitted nonpayment, stat-

---

1. Two counts charge tax evasion in violation of 26 U.S.C. § 7206(1) for allegedly failing to report $300 a week in income from coin operated "peep shows" over a two year period.

ed they had expected their employers to pay, and showed convincingly that they could not themselves make the payments. Under these circumstances, defendants sought relief from this condition of probation.

The Georgia trial and appellate courts denied this relief, revoked the probation and ordered defendants to jail. The Supreme Court granted *certiorari,* interestingly to consider whether the Equal Protection Clause was offended by the revocation of probation for those unable to pay fines. Ultimately, however, the Supreme Court never reached this issue and instead disposed of the matter by treating an entirely different issue, namely, whether defendants' Due Process rights were violated in light of their lawyer's potential conflict of interest. The conflict, more concretely, was that defendants' interests may diverge from the interests of their employer, the owner or operator of the criminal enterprises, in various ways, including

(1) the employer may exert such control over the attorney and the conduct of the defense that defendants will be precluded from giving testimony against the employer even if that testimony were helpful to defendants, or

(2) the employer's real interest in establishing favorable precedent may dictate tactical and other decisions inimical to defendant's interests.

Given these preceived risks from counsel's divided loyalties, Justice Powell, for the majority, remanded the case with instructions to "hold a hearing to determine whether the conflict of interest ... actually exists." *Wood v. Georgia,* 450 U.S. 261, 273, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981). *Simpson,* on essentially similar facts, reaches the identical result.

Both cases are at present distinguishable. More precisely, in contrast to *Wood,* the facts in the case at bar have not, and may well never, develop to the point that a Due Process violation appears to be an immediate and realistic possibility. In Justice Powell's words,

[T]he record does demonstrate that the *possibility* of a conflict of interest was

sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further. The facts outlined above were all made known at that time. The court must have known that it had imposed disproportionately large fines—penalties that almost certainly were increased because of an assumption that the employer would pay the fines. The court did know that petitioners' counsel had been provided by that employer and was pressing a constitutional attack rather than making the arguments for leniency that might well have resulted in substantial reductions in, or deferrals of, the fines. These facts demonstrate convincingly the duty of the court to recognize the possibility of a disqualifying conflict of interest....

450 U.S. at 272, 101 S.Ct. at 1104 (footnotes omitted).

No facts yet brought to this Court's attention show any divergence of interests such as the failure in *Wood* to make arguments for leniency. No facts listed by the government "demonstrate convincingly" the possibility of a *particular* disqualifying conflict of interest. Absent something more than a mere possibility of a conflict, a hearing is neither required nor appropriate. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (on appeal, defendant must show actual conflict to establish Sixth Amendment violation); *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (same).

The Fourth Circuit reached the same conclusion in *United States v. Ramsey,* 661 F.2d 1013 (1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982). There, the Court in a drug conspiracy case found no inherent conflict of interest precluding joint representation of three defendants. In reaching this conclusion, the Court made the following remarks pertinent here:

[T]he *Wood* Court held that the possibility of this particular conflict of interest was sufficiently apparent at the time of the defendants' probation revocation hearing that the trial court had a duty to inquire further into that possibility. There is, of course, always a possibility of conflict in any case where one attorney

represents more than one defendant in the same trial, but the common thread running through the Court's decisions in *Wood, Cuyler,* and *Hollaway* is that it is not the mere possibility of any conflict of interest that requires a trial court to make a *sua sponte* inquiry, but the possibility of a particular conflict.

661 F.2d at 1018.

The contrast between the instant case and *Wood* is brightly illuminated by Judge Sprouse's conclusion that

> *Wood* clarified this principle of sixth amendment law by applying *Cuyler* to a situation in which the possibility of a specific conflict of interest was so strong as to require a *sua sponte* inquiry into its existence.

661 F.2d at 1018–19.

Here, there is no evidence of *any* possibility of a specific conflict of interest, let alone a possibility so striking or strong as to warrant *sua sponte* investigation. To hold otherwise would effectively place in question and subject to hearing a vast number of representations, for it is not at all uncommon for employers, and indeed for special interest groups, to retain and pay lawyers for private litigants. To require a hearing in all these instances on the mere possibility of a conflict is an unnecessary and unwarranted intrusion into lawyer-client relationships, a result neither compelled nor contemplated by *Wood.*

For all these reasons, the Government's Motion for Inquiry Into Disqualification of Defense Counsel is denied. Of course, circumstances may change such that in the future a specific conflict becomes apparent and more than a mere possibility.[2] In that event, the government has leave to renew this motion.

---

**2.** The conflict perceived in *Wood* may never arise in this case for a number of reasons. For example, the defendants here may not be convicted. Even if convicted, defendants here, unlike those in *Wood,* may be as interested as their benefactor in establishing precedent. Or indeed neither the defendants nor their benefactor may be interested in establishing precedent, but simply in establishing innocence. Finally, unlike *Wood,* it is unclear that the defendants' interests (whether in winning acquittal or in seeking leniency, if necessary) and an interest in establishing precedent are divergent.