JUSTICE NELSON,
dissenting.
¶54 I dissent from Issue 1 because I disagree with the Court that the conflicts in this case were alleviated by assigning defense counsel from separate public defender regions to represent the two defendants. In my view, distinguishing the various regions as different “firms” is an artificial distinction that is not supported by actual practice within the public defender system. Furthermore, the Opinion does not resolve the underlying issue in this case because it does not address the inherent problems brought up by the ACLU in its amicus brief.
¶55 The Montana Legislature created the statewide public defender system in 2005 ‘to provide effective assistance of counsel to indigent criminal defendants” and to “ensure that the system is free from undue political interference and conflicts of interest ...” Section 47-1-102, MCA (emphasis added). The Commission established to oversee this new system adopted the following administrative policy to handle conflicts of interest within the system:
When a case is determined to be a conflict of interest, the Regional Deputy Public Defender shall assign the case to a contract attorney whose name is maintained on the conflict attorney list or to a public defender employed outside his/her region.
Office of the State Public Defender Administrative Policies, No. 116, ‘Conflict Cases” (May 11, 2007).
¶56 The Commission also adopted standards for the handling of conflict cases. One such standard states:
Each independent regional office, including any local office under its supervision, is a separate “firm” for purposes of representing clients. Accordingly, a client with a conflict of interest with one regional office may be represented by another regional office.
Commission Standard III(4)(B). However, simply designating regional public defender offices as separate “firms” does not make it so.
¶57 While both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee an individual the right to the effective assistance of counsel in all criminal prosecutions, the Sixth Amendment also imposes upon counsel certain basic duties such as “a duty of loyalty, a duty to avoid conflicts of interest.” Strickland v. Washington, 466 U.S. 668, 688, 104 *105 S. Ct. 2052, 2065 (1984) (citing Cuyler v. Sullivan, 446 U.S. 335, 346, 100 S. Ct. 1708, 1717 (1980)).
¶58 In Strickland, the Supreme Court noted that while, ordinarily, prejudice to the defendant must be shown with respect to deficient performance by counsel, there are certain instances where prejudice is presumed, such as “when counsel is burdened by an actual conflict of interest.” Strickland, 466 U.S. at 692, 104 S. Ct. at 2067. According to Strickland, prejudice is presumed in such cases because ‘it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.” Strickland, 466 U.S. at 692, 104 S. Ct. at 2067.
¶59 The Supreme Court also recognized that certain conflicts of interest are so basic that they cannot be accurately assessed after a trial. Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173 (1978) (involving joint representation of co-defendants). Consequently, the Supreme Court determined that in such cases prejudice is presumed:
But in a case of joint representation of conflicting interests the evil-ft bears repeating-is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney’s failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney’s representation of a client. And to assess the impact of a conflict of interests on the attorney’s options, tactics, and decisions in plea negotiations would be virtually impossible.
Holloway, 435 U.S. at 490-91, 98 S. Ct. at 1182.
¶60 In the same way, the Montana Rules of Professional Conduct (M.R.P.C.) provide that a lawyer may not represent a client if the representation would involve a concurrent conflict of interest. M.R.P.C. 1.7(a). A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer’s responsibilities to another client....
M.R.P.C. 1.7(a). These Rules also provide that lawyers associated in a ‘firm” cannot “knowingly represent a client when any one of them practicing alone would be prohibited from doing so ....” M.R.P.C. *106 1.10(a).
¶61 While this Court’s Opinion points out that the OPD ‘is conceptually designed so that each regional office is an ‘independent law firm,’ ’’Opinion, ¶ 21, it fails to recognize that, in actual practice, there is very little “independence” between the regional offices. In point of fact, the idea that regional public defender offices are separate and independent law firms is a myth.
¶62 For instance, when he recognized that there was a conflict in this case, Regional Deputy Public Defender Ed Sheehy assigned two attorneys, Paulette Ferguson and Christopher Daly, from his region (Region 2 out of Missoula) to represent St. Dennis. Then, rather than turning Strahan’s representation over to the Regional Deputy Public Defender in Region 1 to appoint someone from that region, Sheehy himself appointed Carolyn Gill and Britt Cotter from the Region 1 office in Kalispell as counsel for Strahan. This is not consistent with the idea that these are “separate firms.” Rather, this indicates that Sheehy’s authority and supervisory capacity extended over all four attorneys. Indeed, the deputy public defenders are “solely responsible for providing guidance to and determining litigation strategy for attorneys assigned to their supervision.” Commission Standard III(4)(A). Hence, here, Sheehy violated the Commission’s own standard.
¶63 As further evidence of that authority and supervisory capacity, there is an exchange of letters between Sheehy and Gill regarding Strahan’s representation. While the Court concludes that we should refrain from considering these letters because they are not part of the record on appeal, Opinion, ¶ 38, in light of the fundamental right to counsel and the importance of this issue regarding the OPD, I would remand this case to the District Court to allow it to review these letters. Because they were written almost six months after the hearing in which Sheehy and Chief Public Defender Randy Hood assured the court that any conflicts in the representation of St. Dennis and Strahan had been resolved, the District Court never had a chance to consider these letters. But, in my view, the court should have the opportunity to review these letters because they demonstrate that the conflicts in the representation of St. Dennis and Strahan had not been resolved.
¶64 Moreover, the Court mischaracterizes these as ‘letters between a St. Dennis OPD attorney and a Strahan OPD attorney.” Opinion, ¶ 38. They are, however, much more than that. They are actually letters between Sheehy, the Regional Deputy Public Defender for Region 2, *107 who appointed the attorneys for both defendants, and a Strahan OPD attorney from Region 1. These letters exemplify Sheehy’s authority over and supervision of the counsel he appointed from both regional offices. In the first letter, dated September 12,2008, Sheehy chastises Gill for the position she was taking in Strahan’s case regarding the examination of some of the physical evidence by an OPD approved expert in Florida. Sheehy states in his letter:
[W]hile you are representing a different client, I need to tell you that I don’t believe it would look good for you, as an OPD attorney, even from a different Region, raising an objection to chain of custody, when the expert the evidence is sent to is an OPD expert. Please explain to me what your concerns are on chain of custody so we can try to work out an acceptable arrangement, on this matter, without your attacking other OPD attorneys or an OPD expert.
In the second letter, Gill reminds Sheehy that they are supposed to be acting as separate offices with respect to these two cases and, as such, she will not hesitate to act in her client’s best interests.
¶65 These letters belie Sheehy’s earlier representation to the District Court that the regional public defender offices are separate ‘firms.” His letter indicates that Sheehy considers the OPD to be a single entity whose procedures should not be questioned or challenged. And, this letter clearly shows the inherent problem with having the attorneys for both defendants come from within the public defender system.
¶66 Also not of record in this matter, but of critical importance to the conflict issue in this case-and thus information that also should be reviewed by the District Court on remand-is a report prepared by a group of consultants from American University retained by the Commission to assess Montana’s new public defender system. These consultants did not issue their final report until October 2009 (hereafter referred to as “the AU Report”).[1] The AU Report was based upon a review of the public defender system in Montana from August 2008 through June 2009. It stated the following with respect to conflict cases:
As to the conflict issue at the trial level, it is strongly suggested that the contract lawyer retained in a conflict situation or staff lawyer from another Region does not resolve the conflict, either in form or substance. In practice, whether intended or not, the *108 Agency is highly centralized. The Chief Defender exercises complete authority throughout the Agency subject only to the Commission, and she is not reluctant to exercise that authority. Regions are not independent entities; the enabling legislation confers authority upon and responsibility for everything and anything that relates to representation of the indigent to the Chief Public Defender.
The AU Report, p. 36 (emphasis added).
¶67 In addition, the AU Report stated that, in the consultant’s view, Montana’s public defender system was a single law firm, regardless of the creation of regions and regional directors: ‘While the Legislation authorizes the Commission to create up to 11 Regions, neither the Regions nor the Appellate office are independent units in fact or in practice.”The AU Report, p. 38 n. 15. Rather, as the ACLU points out in its amicus brief on appeal,
the public defender system in Montana is one cohesive whole, supervised closely by one person, governed by the same policies and procedures, trained in the same way by the same personnel, and tied to the same contracts for investigators and experts. For all intents and purposes it is one administrative unit; one single entity with various branches. The different regions within the public defender system are not separate or distinct in any way from the overall public defender system. Each is accountable to the same person, under the same standards and principles. [Emphasis added.]
¶68 Furthermore, in attempting to distinguish the regional public defender offices from private law firms in the context of conflict cases, the Court points out that unlike private law firms, the OPD is a not-for-profit public , entity and that because its attorneys are salaried employees, their compensation is not driven by their success or failure. Opinion, ¶ 30. Similarly, the State claims in its brief on appeal that unlike lawyers in a law firm, public defenders do not have a financial incentive to represent clients with conflicts of interest because they do not share legal fees.
¶69 Although it is true that public defenders are salaried employees and thus they do not have a financial incentive to represent conflicted co-defendants, the OPD itself has a fiscal interest in retaining the representation of conflicted co-defendants, not because it would result in the OPD making more money-as would be the case with a private law firm-but because it would prevent the loss of fiscal resources. As St. Dermis points out in his brief on appeal, the OPD is “a woefully *109 underfunded agency.”Consequently, the more conflicted co-defendants who are assigned to counsel outside the OPD, the higher the cost to the OPD.
¶70 The Court also notes its satisfaction with the “safeguards” and “ethical walls” in place at OPD that purportedly guarantee that each regional public defender office remains a separate “firm” under the M.R.P.C. for conflict of interest purposes. Opinion, ¶¶ 34,36. Included among these safeguards, the Court lists various OPD privacy and confidentiality protections such as the method the OPD employs to keep client bills separate and the fact that attorneys from different regions do not have physical access to OPD offices in other regions, nor do they have computer access to other OPD attorney’s files. Opinion, ¶¶ 23, 34.
¶71 However, there is more to the issue of conflict of interest than simply confidentiality in communications. Even if information remains confidential and access to an office building is limited, a concurrent conflict remains simply because the defendants’ interests are directly adverse.
¶72 In this case both St. Dennis and Strahan were charged with being accountable for the actions of the other, and, from the beginning, Strahan placed the lion’s share of the culpability onto St. Dennis. Strahan’s testimony was critical and damning. It was Strahan’s interview with law enforcement officers that initially implicated St. Dennis in Salcido’s death. It was Strahan who characterized St. Dennis as the initial and primary aggressor in the death. It was Strahan who told about St. Dennis cleaning blood off of his shoes. It was Strahan who provided the only eye-witness testimony against St. Dennis at trial. That these two co-defendants had differing defenses and divergent interests is an understatement.
¶73 In Adams v. State, 380 So. 2d 421 (Fla. 1980), the Supreme Court of Florida held that a trial court’s appointment of a public defender from one circuit to handle a postconviction motion asserting ineffective assistance of counsel against a trial attorney from another circuit was improper. The court reasoned that the second public defender would be faced with the dilemma of vigorously asserting the petitioner’s claim or defending the professional reputation of his office. This, the court asserted, “would be at least as great a conflict as having the same office represent two defendants with conflicting interests.” Adams, 380 So. 2d at 422.
¶74 A similar dilemma is present in this case as evidenced by Sheehy’s letter to Gill wherein Sheehy chastises Gill for raising an objection to *110 the chain of custody because he doesn’t believe “it would look good” for Gill, as an OPD attorney, to raise such an objection when the expert the evidence is sent to is an OPD expert. In addition, neither Strahan’s nor St. Dennis’s attorneys could raise the conflicts issue because of the argument established by their supervisors, Sheehy and Hood. To do so would have been to argue against the position of their supervisors and employer.
¶75 In conclusion, the public defender system exists to protect the fundamental right of effective assistance of counsel. Despite the best efforts of the Legislature, the Commission, and many who have worked to create the public defender system, the current system is burdened with some significant flaws-as evidenced here and in the AU report. Moreover, it is seriously underfunded. Rather than sweeping these problems under the technicality carpet, we should address these issues head on to the end that the 2011 session of the Legislature will have some guidance in addressing the public defender system’s problems. In failing to do so, we are ultimately passing the buck to further litigation and, likely, the federal courts. I cannot agree with this approach.
¶76 I would remand this case to allow the District Court to reconsider the conflict-of-interest issue in light of the information previously discussed. I dissent from our failure to do so.

A copy of the AU Report may be obtained from the Public Defender Commission website at http://publicdefender.mt.gov/AUeval.asp (accessed October 27, 2010).